STATE OF NORTH CAROLINA v. JOSEPH EUGENE VINES

No. 69A85

(Filed 2 July 1986)

1. **Constitutional Law § 28— murder—testimony at related trial—immunity hoped for—not promised—motion to dismiss denied**

   The trial court did not deny defendant due process in a prosecution for first degree murder by failing to grant his motion to dismiss due to a grant of immunity where the judge found that defendant was not promised immunity from prosecution in this case in exchange for his testimony in other cases and the findings were supported by the testimony of defendant and others at the other trial and the affirmation of such testimony at the hearing on defendant's motion to dismiss.

2. **Indictment and Warrant § 3; Criminal Law § 13— kidnapping in one county—murder in another—indictments in one county valid**

   Indictments which alleged that both a kidnapping and murder occurred in Buncombe County were valid on their face, and evidence that the murder actually occurred in Ashe County did not raise a fatal variance between the allegations of the indictment and the proof at trial and did not deprive Buncombe County of jurisdiction because the kidnapping undisputably took place

in Buncombe County and defendant was charged and convicted on the theory of felony murder.

**3. Criminal Law § 15— kidnapping and murder—separate counties—exclusive venue—first county to return true bill**

The venue in a murder prosecution lay in Buncombe County rather than Ashe County where the Ashe County grand jury returned a finding of "no true bill" and the Buncombe County grand jury subsequently returned a true bill. Criminal process was issued against defendant only when the true bill was returned by the Buncombe County grand jury and Buncombe County, being the first county to issue criminal process in defendant's case, had exclusive venue under N.C.G.S. § 15A-132(c) (1983).

**4. Jury § 7.11— death-qualified jury—motion to prohibit—properly denied**

The trial court in a first degree murder prosecution did not err by denying defendant's motion to prohibit the prosecution from death qualifying the jury.

**5. Homicide § 30.1— felony murder—refusal to submit lesser offense—no error**

The trial court did not err in a prosecution for first degree murder by refusing to submit to the jury possible verdicts of second degree murder and involuntary manslaughter where defendant was found guilty under the felony murder rule with kidnapping being the underlying felony. All of the evidence tended to show that the murder was committed in the perpetration of the kidnapping, there is no second degree felony murder, and duress is not a defense to an intentional killing. N.C.G.S. § 14-17 (1981).

**6. Homicide § 21.6— felony murder—evidence sufficient**

The trial court properly denied defendant's motions to dismiss in a first degree murder prosecution based on felony murder where there was substantial evidence of each essential element of first degree kidnapping, first degree murder by reason of premeditation and deliberation and under the felony murder rule, and that defendant was the perpetrator of the crimes.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing life imprisonment entered by *Lewis, J.,* at the 25 October 1984 Criminal Session of Superior Court, BUNCOMBE County, upon a jury verdict of guilty of first-degree murder under the felony murder rule. Heard in the Supreme Court 15 October 1985.

*Lacy H. Thornburg, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Gary S. Cash and Edward C. Hay, Jr., for defendant-appellant.*

FRYE, Justice.

Defendant was tried upon indictments charging him with first-degree kidnapping and murder of Lonnie Gamboa.[1]

Defendant contends that the trial court erred in denying his motion to dismiss the charges against him due to a grant of immunity, in denying his motion to dismiss for improper venue, in denying his motion to prohibit death qualification of the jury, in failing to submit second-degree murder and involuntary manslaughter as possible verdicts, and in denying his motions to dismiss for insufficiency of the evidence. For the reasons stated in this opinion, we find no error in the trial proceedings leading to defendant's convictions of the crimes charged.

Defendant was charged with murder in the first degree and first-degree kidnapping. Evidence for the State showed that on 5 January 1982, defendant had a meeting with federal agents R. B. Kaiser, Stan Keel and Thomas Chapman to discuss the murder and kidnapping of Lonnie Marshall Gamboa. Defendant told the agents that on 23 December 1981, at the request of Alan Ray Hattaway, he picked up Lonnie Marshall Gamboa and took him to a bar on Swannanoa River Road where they met with Hattaway. After talking briefly in the bar, the three men got into Hattaway's car and drove to another bar where they met Gary Hansford Miller. Miller got into the car and pointed a pistol at Gamboa. Gamboa was disarmed, his hands and arms taped together, and put in the trunk of the car. This all occurred in Buncombe County. The four men then drove for approximately two hours to Paul Bare's residence in Ashe County. Upon arrival at Bare's house, defendant and Miller removed Gamboa from the trunk and handcuffed him to a tree in the woods.

After approximately four hours elapsed, Bare and Miller released Gamboa from the tree and took him to Bare's garage. After discussing a debt that Gamboa owed Miller, Gamboa was blindfolded and driven to Ore Knob Mine in Ashe County. Defendant took Gamboa inside the fenced-in area surrounding the mine

---

1. Paul Wilson Bare, Gary Hansford Miller, and Alan Ray Hattaway were also convicted for their participation in the murder and kidnapping of Lonnie Gamboa. *See State v. Bare*, 309 N.C. 122, 305 S.E. 2d 513 (1983), and *State v. Miller*, --- N.C. ---, 341 S.E. 2d 531 (1986).

shaft, and after receiving instructions from Bare and Miller, pushed Gamboa into the mine shaft. Because Gamboa got hung on a tree root during the fall, defendant pulled him out and pushed him in again. Gamboa's body was recovered from the mine shaft on 25 January 1982.

On 6 January 1982, after being advised of his *Miranda* rights, defendant related his story concerning the Gamboa murder and kidnapping to Ashe County Sheriff Richard Waddell. Defendant's statement was subsequently reduced to writing and signed by defendant. Defendant was not arrested by Ashe County authorities at this time. He was allowed to leave North Carolina and travel to Florida where he remained for several months. While still residing in Florida, defendant traveled to Chicago, Illinois, to testify against Gary Miller concerning another murder and kidnapping in Ashe County. Defendant then returned to North Carolina to testify as the State's chief witness in the case against Paul Bare, *State v. Bare*, 309 N.C. 122, 305 S.E. 2d 513 (1983). After Bare's trial, defendant was enrolled in the Federal Witness Protection Program for approximately one year.

On 23 March 1983, a first-degree murder charge was sent to the Ashe County Grand Jury and a finding of "no true bill" was returned. On 14 February 1984, the Buncombe County Grand Jury indicted defendant on murder and first-degree kidnapping charges.

Defendant testified in his own behalf at trial. Defendant's testimony was that he primarily makes a living traveling to different locations working as an undercover agent for various state and federal law enforcement agencies. Defendant's testimony was consistent with his written confession obtained earlier by the Ashe County Sheriff. However, defendant testified that he had committed the acts under duress and had felt badly about the matter.

The jury returned verdicts of guilty of first-degree murder under the felony murder rule and first-degree kidnapping. The trial judge held that the kidnapping conviction merged with the felony murder conviction and, therefore, defendant was not sentenced thereon.

I.

**[1]**   Defendant contends that the trial court committed reversible error in failing to grant his motion to dismiss the charges against him due to a grant of immunity.

In the case against Paul Bare, defendant was the State's chief witness. Defendant also testified in a federal criminal case against Gary Miller in Chicago, Illinois, concerning another murder and kidnapping in Ashe County. While preparing for these trials, defendant worked closely with Ashe County police officers, the Ashe County district attorney, and some federal agents. Defendant claims that he was often told by these officials, though not "promised," that he would not be prosecuted in the Gamboa case. Defendant contends that under these circumstances it would be a denial of due process to permit him to be prosecuted.[2]

The trial court held a two-day hearing on defendant's motion and heard testimony from defendant, federal agents Thomas Chapman and Steve Keel, District Attorney Michael Ashburn, and Assistant District Attorney Mike Helms of the Twenty-Third Judicial District, Asheville Police Officers Will Annarino and Ross Robinson, former Ashe County Sheriff Richard Waddell, and John Downey of the Winston-Salem Journal. The court also heard testimony concerning portions of transcripts of previous hearings in which defendant and others testified that no grant of immunity had been promised defendant in exchange for defendant's testimony in Bare's trial. The trial judge's findings were as follows:

. . . .

2. On 5 January 1982, Defendant called A.T.F. Special Agent Thomas L. Chapman, and volunteered information concerning a murder in Ashe County;

3. From that time on until indicated, Defendant cooperated with and offered trial testimony for the State of North Carolina, and the United States;

4. The Defendant has not been granted formal immunity in accordance with G.S. 15A-1054(a) or applicable Federal statutes;

---

2. Defendant does not claim a grant of immunity under Article 61, Chapter 15A, of the North Carolina General Statutes.

5. Although Defendant may have hoped that his cooperation with or testimony for State and Federal officials would result in his not being prosecuted, no officer, much less prosecutor, ever told him or indicated in any manner that he would not be prosecuted *if he provided truthful testimony* (emphasis in original); indeed "truthful testimony" was never mentioned in this record;

6. In fact, Defendant testified that he "hasn't [sic] been told that if I testified I wouldn't be charged" and that he probably would have testified regardless;

7. Defendant has repeatedly made sworn statements in two (2) trials consistent with paragraph six.

It is well settled that "facts found by the trial judge are conclusive on the appellate court when supported by competent evidence." *State v. Pruitt II*, 286 N.C. 442, 454, 212 S.E. 2d 92, 100 (1975). Thus, we must determine whether the judge's findings are so supported.

In *State v. Bare*, 309 N.C. 122, 305 S.E. 2d 513, defendant, when questioned as to whether he had been granted immunity from prosecution in the Gamboa case, testified:

Q. Have you ever been promised anything else other than the Witness Protection Program for testimony you are giving here and participation in this case?

A. No sir I have not even been promised to [sic] put on Witness Protection; the case is still in Washington and still deciding if they are going to put me under witness protection. Not been promised anything by Mr. Chapman, Ashburn or anything else.

Q. So far as you know if they wanted to charge you today they could?

A. Yes sir.

Q. But they never said they wouldn't charge you, is that correct?

A. No sir, they didn't tell me they would not.

At a probable cause hearing in the *Bare* case, defendant testified as follows:

Q. Have you been offered any deal whatsoever by the State of North Carolina or any of its agencies or with the Federal Government or United States in exchange for your testimony in this case?

A. No, sir.

. . . .

Q. Have you been offered any immunity?

A. No, sir.

. . . .

Q. You have not discussed immunity with the State?

A. I haven't discussed it.

. . . .

Q. So that you came forward as a citizen to offer this information to Sheriff Waddell to do with as he sees fit?

A. Yes, sir.

. . . .

Q. And if he wants to arrest you right now, he has that right.

A. Yes, sir.

At the hearing on the motion to dismiss, defendant was read the questions and answers above in which he stated that he had not been granted immunity for his testimony in the Bare trial. Defendant testified that he had made such statements and that "nobody made any deals with me."

In addition, Thomas L. Chapman, a federal agent, testified at Bare's trial as to the possible indictment of defendant as follows:

Q. Well sir, isn't it true in order to get into the program, if Mr. Ashburn is the man who did it, whoever is in charge, have to first tell the government they will not be indicted for the crime [sic] which he was involved?

A. No sir, that is incorrect, he could be put in the program if in fact at a later time he was going to be indicted.

. . . .

Q. Is it your testimony that no promise of immunity of any type have [sic] been given to Mr. Vines?

A. That's correct.

Q. And you discussed that with Mr. Ashburn and Mr. Waddell?

A. That's correct.

Q. And if any of the parties wanted to, who had the power and authority they could indict Mr. Vines at this time?

A. It's my understanding he could be indicted.

At the hearing on defendant's motion to dismiss, Agent Chapman testified that prior to Bare's trial District Attorney Michael Ashburn told him that he had no intention of prosecuting defendant. Chapman later relayed this message to defendant. On cross-examination, Chapman admitted that he had testified under oath at Bare's trial that defendant had not been promised immunity from prosecution.

Michael Ashburn, District Attorney for the Twenty-Third Judicial District (includes Ashe County), testified at the hearing that he never promised or implied to defendant that he would not prosecute him and that he did not recall telling any other individuals that he would not prosecute defendant. In light of defendant's and others testimony under oath during Bare's trial, and the affirmation of such testimony at the hearing on defendant's motion to dismiss the charges, we conclude that the judge's findings that defendant was not promised immunity from prosecution in the Gamboa case in exchange for his testimony against Paul Bare were supported by competent evidence. Therefore, the trial judge did not err in denying defendant's motion to dismiss the charges against him based on a grant of immunity.

II.

Defendant next contends that the trial court erred in denying his motion to dismiss the murder charge against him because of improper venue. Defendant further contends that Buncombe County was without jurisdiction to indict him for the murder of Lonnie Gamboa.

## JURISDICTION

[2]  Defendant argues that since the State's evidence showed that he participated in the kidnapping of Gamboa in Buncombe County, and the murder in Ashe County, Buncombe County is without jurisdiction in the murder case. In support of his argument, defendant erroneously relies on *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984). In *Randolph*, defendants contended that the trial court erred when it refused to dismiss the indictments against them for kidnapping and larceny. Although defendants were indicted by the Wake County Grand Jury, the indictments alleged that the crimes were committed in Cumberland County. We held that the indictments were fatally flawed since a grand jury has jurisdiction to indict only for crimes alleged to have occurred in its own county. On the authority of *Randolph*, we arrested judgments entered on indictments for first-degree sexual offense and rape where the indictments were returned by the Stanly County Grand Jury but alleged that the offenses occurred in Mecklenburg County. *State v. Paige and Lowery*, 316 N.C. 630, 343 S.E. 2d 848 (1986). We so held because "the indictments show on their face that the grand jury which returned them lacked jurisdiction over the offenses charged." *Id.* at 639, 343 S.E. 2d at 854.

In the instant case, the indictments returned by the Buncombe County Grand Jury in both the murder and kidnapping cases alleged that the crimes occurred in Buncombe County. Therefore, the indictments are valid on their face. *Id.* The problem arises here since the indictment alleges that the murder occurred in Buncombe County, but the evidence tends to show that the victim was actually pushed into the mine shaft in Ashe County. We must therefore determine whether a fatal variance exists between the allegations in the indictment and the proof at trial.

Defendant was charged with and convicted of first-degree murder on the theory of felony murder. A necessary element of first-degree murder under the felony murder rule is the underlying felony. *See State v. Rinck*, 303 N.C. 551, 280 S.E. 2d 912 (1981); *State v. Hutchins*, 303 N.C. 321, 279 S.E. 2d 788 (1981). The underlying felony, kidnapping, undisputably took place in Buncombe County. Thus, a necessary element of the murder took place in Buncombe County. Under the law of determining jurisdic-

tion as between states, jurisdiction lies in this state if any of the essential acts forming the crime take place in this state. *See* N.C.G.S. § 15-131; N.C.G.S. § 15-132; *see also State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334 (1964). This same rationale extends to jurisdiction of the county grand jury to indict.

Since the indictment alleges that the murder occurred in Buncombe County and the evidence disclosed that the kidnapping, an essential element of the crime, occurred in Buncombe County, there was no fatal variance between the allegations in the indictment and the proof at trial. Thus, we reject defendant's jurisdictional challenge to the indictment.

## VENUE

[3] Defendant contends that venue in the murder case did not properly lie in Buncombe County since Ashe County first sought an indictment for murder against him.

N.C.G.S. § 15A-132, *Concurrent venue,* provides that:

. . . .

(c) When counties have concurrent venue, the first county in which a criminal process is issued in the case becomes the county with exclusive venue.

On 23 March 1983, a first-degree murder charge was submitted to the Ashe County Grand Jury and returned with a finding of "no true bill." On 14 February 1984, the Buncombe County Grand Jury returned a true bill charging defendant with the murder and kidnapping of Lonnie Marshall Gamboa. No true bill of indictment has been returned in Ashe County charging defendant with the murder or kidnapping of Gamboa.

"The office of an indictment is to inform the defendant of the charge against him with sufficient certainty to enable him to prepare his defense." *State v. Gates,* 107 N.C. 832, 835, 12 S.E. 319, 320 (1890). An indictment returned "no true bill" is not criminal process issued since it lacks the force and effect to instigate criminal action against an individual. Criminal process was issued in the murder case against defendant only when the true bill of indictment was returned by the Buncombe County Grand Jury. Buncombe County, being the first county to issue criminal

process in defendant's case, had exclusive venue to try the murder case. N.C.G.S. § 15A-132(c) (1983).

## III.

**[4]** Defendant next contends that the trial court erred by denying his motion to prohibit the prosecution from "death qualifying" the jury prior to the guilt-innocence phase of the trial. Specifically, defendant asks this Court to reconsider *State v. Young*, 312 N.C. 669, 325 S.E. 2d 181 (1985) ("death qualification" of jury in first-degree murder cases is constitutional) in light of the "original" arguments made in *Keeten v. Garrison*, 578 F. Supp. 1164 (W.D.N.C. 1984) ("death qualification" of jury violates sixth amendment right to be tried by jury drawn from representative cross-section of community).

We first note that the decision on which defendant relies, *Keeten v. Garrison*, 578 F. Supp. 1164, was reversed by the Fourth Circuit Court of Appeals, *Keeten v. Garrison*, 742 F. 2d 129 (4th Cir. 1984). That court held that a state may exclude jurors opposed to the death penalty without violating a defendant's right to be tried only by a jury drawn from a fair cross-section of the community.

In the recent decision of *Lockhart v. McCree*, 476 U.S. 162, ---, 90 L.Ed. 2d 137, 147 (1986), the United States Supreme Court held that the federal constitution "does not prohibit the states from 'death qualifying' juries in capital cases." *See also State v. Barts*, 316 N.C. 666, 343 S.E. 2d 828 (1986). In light of this holding, it is clear that the trial court did not err in denying defendant's motion.

## IV.

**[5]** Defendant contends that the trial court erred in refusing to submit to the jury as possible verdicts second-degree murder and involuntary manslaughter. The trial judge submitted as possible verdicts: first-degree murder by reason of malice, premeditation and deliberation; first-degree murder under the felony murder rule; voluntary manslaughter, and not guilty. Defendant was found guilty of first-degree murder under the felony murder rule, kidnapping being the underlying felony. Defendant contends that his evidence that he pushed Gamboa into the mine shaft under duress is sufficient to require the submission of second-degree

murder and involuntary manslaughter, and the failure of the court to do so was prejudicial error.

In the instant case, all of the evidence tended to show that the murder was committed in the perpetration of the felony of kidnapping. *See* N.C.G.S. § 14-17 (1981). Under the circumstances, the only way the jury could properly have found defendant guilty of second-degree murder or involuntary manslaughter would be to fail to find that the murder was committed in the perpetration of the kidnapping. Such finding would be completely contrary to the evidence presented. There is no second-degree felony murder nor is duress a defense to an intentional killing. *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982). Since defendant was found guilty of murder in the first degree on the theory of felony murder and was found not guilty on the charge of first-degree murder with premeditation and deliberation, no prejudice resulted from the court's failure to submit second-degree murder or involuntary manslaughter as possible verdicts. *See State v. Wall*, 304 N.C. 609, 621, 286 S.E. 2d 68, 75 (1982).

## V.

[6]  Lastly, defendant contends that the trial court erred in denying his motions to dismiss at the close of the State's evidence, to dismiss at the close of all the evidence, and to set aside the verdict based on the insufficiency of the evidence.

After the denial of defendant's motion to dismiss at the close of the State's evidence, defendant proceeded to offer evidence. Having offered such evidence, defendant waived his motion to dismiss at the close of the State's evidence. *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631 (1980). Proper consideration is only upon his motion to dismiss made at the close of all the evidence. *Id.*

Upon a motion for dismissal, the trial court must determine whether there is substantial evidence of each essential element of the charged offenses and of the defendant being the person who committed the crimes. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984); *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). When such evidence is present, the motion to dismiss is properly denied. *See State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 160, 322 S.E. 2d at 387. The trial court must consider

the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. *Id.* Contradictions and discrepancies in the evidence must be resolved in favor of the State and evidence presented by the defendant is not to be considered unless favorable to the State. *Id.*

When the evidence in the instant case is viewed in the light most favorable to the State, there is substantial evidence of each essential element of first-degree kidnapping, first-degree murder by reason of premeditation and deliberation and under the felony murder rule, and that defendant was the perpetrator of the crimes. Thus, the trial judge's denial of defendant's motion was proper.

For the reasons stated above, we also find no error or abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict based on the insufficiency of the evidence.

In defendant's trial we find

No error.