STATE OF NORTH CAROLINA v. RICKY BRIGHT

No. COA97-963

(Filed 6 October 1998)

## 1. Evidence— credibility of child—inadmissible expert testimony—harmless error

A physician's testimony that he "believed that [a child kidnapping, rape and sexual offense victim] was a reliable informant" constituted expert testimony as to the child's credibility and was improperly admitted. However, this error was not prejudicial because the physical evidence alone overwhelmingly connected defendant to the crimes charged and supported defendant's convictions of those crimes. [Concurring in result opinion by Judge Greene in which Judge Mark D. Martin concurred.]

## 2. Appeal and Error— appealability—issue not raised at trial

A defendant in a prosecution for burglary, kidnapping, sexual offense, and rape involving a ten-year-old child waived the issue of release in an unsafe place by not raising it at trial.

## 3. Criminal Law— jurisdiction—submission to jury

Convictions for rape and sexual offense were vacated where defendant moved at trial to dismiss for lack of jurisdiction, the

trial court denied the motion, implicitly finding that sufficient evidence existed upon which the jury could conclude that the crimes occurred in North Carolina, but the court did not then instruct the jury as to the burden of proving jurisdiction and that it should return a special verdict indicating a lack of jurisdiction if it was not convinced beyond a reasonable doubt.

Judge GREENE concurring in the result.

Appeal by defendant from judgments entered 7 November 1996 by Judge Julius A. Rousseau, Jr. in Wilkes County Superior Court. Heard in the Court of Appeals 20 May 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General Laura Crumpler, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant was indicted on 12 February 1996 for one count of first-degree burglary, one count of first-degree kidnapping, three counts of first-degree sexual offense, and one count of first-degree rape. These charges were joined for trial, and the case was heard by a jury at the 4 November 1996 Criminal Session of Wilkes County Superior Court. The jury found defendant guilty on all counts, and the trial court sentenced defendant to six aggravated terms of imprisonment, to run consecutively. The pertinent facts follow.

The State's evidence tended to show that on 7 October 1995, ten-year old Queena Lynn Taylor and her family spent the night at a neighbor's trailer. The door to the trailer was unlocked, and a window was open in the living room where Queena and her younger brother were sleeping. Later that night, Queena awoke and found herself in the passenger seat of defendant's car. She was naked and her mouth was covered with duct tape. Defendant, whom Queena knew because he lived in a nearby trailer, ordered her to get in the back seat. Then, he took off his clothes and climbed into the back seat as well. Thereupon, defendant engaged in sexual intercourse with Queena and committed a number of other sexual acts against her, before allowing her to get dressed. Queena testified that while she put on her clothing, she noticed blood on her clothes and on the car seat.

**STATE v. BRIGHT**

[131 N.C. App. 57 (1998)]

After he and Queena got dressed, defendant drove for some distance on Interstate 81. During the drive, Queena spotted West Virginia signs, and at one point, defendant told her that they were near Charleston, West Virgina. Early the next morning, defendant dropped Queena off at Mountain View Elementary School, which Queena attended. The school was closed, however, and Queena had to find her way home.

When she reached her home, Queena told her mother, who had been searching for her, that defendant had abducted her and that he had touched her inappropriately. After contacting the police, Queena's mother took Queena to Wilkes Regional Medical Center, where she was examined by Dr. Marshall Odom. Dr. Odom's exam revealed that Queena had large contusions on both buttocks, an anal fissure, a laceration on the left side of her vagina, blood in her vagina, and a ruptured hymen. Dr. Odom could not conduct an internal exam because Queena was in a great deal of pain. Therefore, Dr. Odom called Dr. Thomas Frazer of the Wilkes County Child Medical Evaluation Program and asked him to perform an internal exam the following day.

Dr. Frazer examined Queena the following morning and, in addition to Dr. Odom's findings, found a cut at the back of her vagina "similar to the episiotomy that many women experience at childbirth." Dr. Frazer also found several cuts around her anus and an adult pubic hair inside her anal canal. Dr. Frazer questioned Queena about the source of these injuries, and she gave him a detailed account of her experience with defendant.

Detective Lieutenant Farrington of the Wilkes County Police Department attempted unsuccessfully to apprehend defendant at his trailer. Because of their inability to locate defendant, the Wilkes County police contacted the FBI. As part of the effort to secure his arrest, defendant was featured on "America's Most Wanted" and "Unsolved Mysteries." From tips received in response to these programs, defendant was ultimately captured in Nashville, Tennessee.

Following defendant's arrest, the FBI impounded his car and conducted forensic tests on its interior. These tests revealed human blood on the seat cushion and carpet fibers matching those found on Queena's clothing. In addition, a DNA analysis of a section of the crotch of Queena's undergarments disclosed semen with a DNA banding pattern that matched a sample of defendant's blood. The proba-

bility that the DNA found on Queena's undergarments belonged to someone other than defendant was approximately 1 in 2.1 billion.

At the close of the State's evidence, defendant moved to dismiss all of the charges against him. The trial court denied the motion, and defendant presented his defense. The jury deliberated and returned guilty verdicts on all of the offenses charged. Defendant appeals.

Defendant's first argument is that the trial court erred in permitting an expert witness to testify that the complainant, Queena, was a "reliable informant." Defendant contends that this constituted inadmissible expert opinion testimony regarding Queena's credibility. This argument is unpersuasive.

The law governing the scope of expert opinion testimony concerning the credibility of a witness is well established in this state. Under Rule 405(a) of the North Carolina Rules of Evidence, "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." N.C.R. Evid. 405(a). Accordingly, "expert testimony as to the credibility of a witness is not admissible." *State v. Wise*, 326 N.C. 421, 426, 390 S.E.2d 142, 145, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990), *denial of habeas corpus aff'd*, 976 F.2d 729 (4th Cir. 1992).

Defendant objects to the following testimony given by Child Medical Evaluation Physician, Dr. Thomas Frazer, about his interview and evaluation of the victim:

> Queena was interviewed by herself alone with only me in the conference room. She was an intelligent, bright child who is, is or was at that time in the fourth grade at Mountain View Elementary School, and was very able to describe what happened to her with careful detail and without making any inconsistencies, whatsoever. I *believed* that she was a *reliable informant.*

Defendant contends that the description "reliable informant" constituted impermissible opinion testimony regarding the victim's credibility as a witness. However, this statement was not a comment on Queena's credibility as a testifying witness, but was Dr. Frazer's professional observation that at the time of the interview, he "believed" he could <u>rely on the information</u> Queena gave him in forming an opinion as to the source of her injuries. Thus, the statement was proper and admissible.

This conclusion is consistent with our Supreme Court's decisions in *Wise,* 326 N.C. 421, 390 S.E.2d 142, and *State v. Kennedy,* 320 N.C. 20, 357 S.E.2d 359 (1987). In *Wise,* the trial court allowed an expert witness to use the word "genuine" in describing the emotions of the minor victim while she recounted the sexual assault against her. Our Supreme Court ruled that the testimony was admissible, since it was not an opinion on the victim's credibility, but "a description of the witness' observation of the victim's emotional state during the counseling session." 326 N.C. at 425, 390 S.E.2d at 145. The Court, therefore, held that the trial court committed no error in admitting the testimony.

The Court held similarly in *Kennedy.* When asked on direct examination about the victim's performance on certain personality and IQ tests, the expert, Dr. Dew, testified that the victim responded in an "honest fashion." Finding this testimony admissible, the Court stated the following reasoning:

> We do not consider the testimony of this witness that the victim answered the test questions in an "honest fashion" to be an expert opinion as to her character or credibility. It was merely a statement of opinion by a trained professional based upon personal knowledge and professional expertise that the test results were reliable because the victim seemed to respond to the questions in an honest fashion: her patient did not attempt to give false responses on a psychological test, thereby skewing the test results and rendering the results unreliable. By this answer Dr. Dew was not saying that she believed the victim to be truthful, but rather that she gave truthful answers to the test questions. The psychologist's testimony went not to the credibility of the victim but to the reliability of the test itself.

320 N.C. at 31, 357 S.E.2d at 366. Applying this reasoning, Dr. Frazer, by stating that Queena was a "reliable informant," "was not saying that [he] believed the victim to be truthful, but rather that she gave [reliable] answers to [his questions about the source of her injuries]." *Id.* Hence, defendant's argument fails.

[2] Next, defendant argues that the trial court erred in denying his motion to dismiss the first-degree kidnapping charge, on the ground that there was insufficient evidence that the victim was released in an unsafe place. Defendant, however, failed to raise this issue below; thus, he is deemed to have waived the issue on appeal. *State v. Patterson,* 103 N.C. App. 195, 405 S.E.2d 200 (1991).

**[3]** In his final argument, defendant contends that the trial court erred in entering judgment against him on the rape and sexual offense charges, because there was evidence that these offenses occurred in Virginia, rather than North Carolina. Defendant contends that since he challenged the jurisdiction of the trial court, the court was required to submit to the jury the question of whether the rape and sexual offenses were committed in North Carolina. Defendant's argument has merit.

"It is well settled law that an act must have occurred within the territorial boundaries of the state to be punishable as a crime in the state." *State v. Williams*, 74 N.C. App. 131, 132, 327 S.E.2d 300, 301 (1985) (citing *State v. Jones*, 227 N.C. 94, 40 S.E.2d 700 (1946)). The North Carolina courts have jurisdiction over a crime if any of the essential acts forming the offense occurred in this state. *State v. Vines*, 317 N.C. 242, 250-51, 345 S.E.2d 169, 174 (1986). When jurisdiction of a particular crime is challenged, the burden is on the State to prove beyond a reasonable doubt that the offense in question occurred in North Carolina. *State v. Rick*, 342 N.C. 91, 99, 463 S.E.2d 182, 186 (1995) (citing *State v. Batdorf*, 293 N.C. 486, 494, 238 S.E.2d 497, 502-03 (1977)). If the trial court preliminarily determines that sufficient evidence exists from which a jury could find beyond a reasonable doubt that the crime was committed in North Carolina, the court is obligated to "instruct the jury that unless the State has satisfied it beyond a reasonable doubt that the [crime] occurred in North Carolina, a verdict of not guilty should be returned." *Id.* at 101, 463 S.E.2d at 187 (citing *Batdorf*, 293 N.C. at 494, 238 S.E.2d at 503). "The trial court should also instruct the jury that if it is not so satisfied, it must return a special verdict indicating a lack of jurisdiction." *Id.* (citing *Batdorf*, 293 at 494, 238 S.E.2d at 503). Failure to charge the jury in this manner is reversible error and warrants a new trial. *See id.*

In the case *sub judice*, defendant moved at the close of the State's evidence to dismiss the rape and sexual assault charges against him on the ground that the court lacked jurisdiction. The trial court denied the motions, implicitly finding that sufficient evidence existed upon which the jury could conclude beyond a reasonable doubt that these crimes occurred in North Carolina. However, because jurisdiction had been challenged, the trial court was required to instruct the jury "as to which party bore the burden of proving jurisdiction and that if the jury was unconvinced beyond a reasonable doubt that the [rape and sexual assault crimes], or the essential elements of [these

crimes], occurred in North Carolina, it should return a special verdict so indicating." *Id.* at 101, 463 S.E.2d at 187. Since the trial court failed to instruct the jury appropriately, we vacate defendant's convictions of first-degree rape and three counts of first-degree sexual offense and remand for a new trial on these charges.

For the foregoing reasons, we discern no error as to defendant's first-degree burglary and first-degree kidnapping convictions. However, we vacate defendant's convictions of first-degree rape and first-degree sexual offense, and we remand this case to the superior court for a new trial on these charges.

No error in part, vacated and remanded in part.

Judge GREENE concurs in the result with a separate opinion.

Judge MARTIN, Mark D. concurs with Judge GREENE's separate opinion concurring in the result.

Judge GREENE concurring in the result.

[1] I disagree with the majority's conclusion that Dr. Frazer's testimony, in which he stated he "believed that [Queena] was a reliable informant," was "proper and admissible." This statement constituted expert testimony as to Queena's credibility, and as such, was inadmissible. *See State v. Wise*, 326 N.C. 421, 426, 390 S.E.2d 142, 145 ("[E]xpert testimony as to the credibility of a witness is not admissible."), *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990); *State v. Aguallo*, 318 N.C. 590, 599, 350 S.E.2d 76, 81 (1986) (holding that it was error to allow an expert to testify that she found the victim "believable"). I nonetheless concur in the majority's result, however, because even if the jury had found Queena to be less than credible (which, in any event, is unlikely given that Queena's detailed testimony was consistent with what she had told her family, police, and medical examiners following her abduction), the physical evidence in this case is overwhelming. *See* N.C.G.S. § 15A-1443(a) (1997) (stating that a non-constitutional error is not prejudicial unless there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached"); *cf. Aguallo*, 318 N.C. at 599-600, 350 S.E.2d at 82 (awarding defendant a new trial where there was a "reasonable possibility that a different result would have been reached by the jury" because the physical examination of the victim took place more than six months after the alleged

rape, and defendant's conviction therefore "hinged on the victim's testimony and . . . credibility").

In this case, the physical evidence alone overwhelmingly supports defendant's conviction. As noted in the majority's recitation of the facts, Dr. Odom's examination of Queena in the hours following her abduction revealed large contusions on Queena's buttocks, an anal fissure, a laceration of the left side of Queena's vagina, blood in her vagina, and a ruptured hymen. Dr. Frazer's examination of Queena the next day revealed, in addition to the above, a cut at the back of Queena's vagina and several cuts around her anus. Dr. Frazer also discovered an adult pubic hair inside Queena's anal canal, which was determined to be "microscopically consistent" with defendant's pubic hair. Forensic tests conducted on the interior of defendant's automobile revealed human blood on the seat cushion and carpet fibers matching those found on the clothing Queena had worn on the night of her abduction. A DNA analysis of a section of the crotch of the undergarments Queena had worn revealed semen with a DNA banding pattern that matched a sample of defendant's blood. Expert testimony revealed that the probability that the DNA found on Queena's undergarments belonged to anyone other than defendant was approximately 1 in 2.1 billion. Accordingly, although I believe that Dr. Frazer's testimony as to Queena's reliability was inadmissible, the overwhelming physical evidence in this case specifically connecting defendant to the heinous crimes committed against Queena leads me to conclude that there is no reasonable possibility that the jury would have reached a different outcome in the absence of Dr. Frazer's inadmissible statement.

As to the remaining issues raised by defendant on appeal, I fully concur in the majority opinion.