STATE OF NORTH CAROLINA v. FREDERICK MICHAEL MARINE, DEFENDANT

No COA98-1329

(Filed 19 October 1999)

1. Evidence— expert testimony—victim's credibility

The trial court did not err in a prosecution for first-degree statutory rape by allowing an expert witness to testify that the victim had been "guarded but straight forward" and "honest." The witness's opinion was that the victim suffered from post traumatic stress syndrome disorder and her testimony went to the reliability of her diagnosis, not to the victim's credibility. N.C.G.S. § 8C-1, Rule 702.

2. Evidence— failure to timely object—waived

The failure of a statutory rape defendant to make a timely new objection waived his assignment of error where defendant initially objected when the witness began her answer by saying "Either . . .," the court allowed the testimony "If she knows," the witness gave her "Either . . ." answer, and defendant made no fur-

STATE v. MARINE

[135 N.C. App. 279 (1999)]

ther objection, did not move to strike, and did not request an instruction.

**3. Evidence— testimony in violation of motion in limine— curative instruction—no prejudice**

There was no prejudicial error in a statutory rape prosecution where defendant contended that certain testimony violated his motion in limine prohibiting testimony concerning an investigation of him for use or distribution of controlled substances, but the trial court gave a curative instruction and the jury heard of defendant's suspected distribution of drugs from a defense witness.

**4. Evidence— hearsay—corroboration of victim**

The trial court in a first-degree statutory rape prosecution properly admitted a detective's testimony that another child had told him of defendant touching children in the park. The testimony was specifically offered to corroborate the testimony of the child, the jury was instructed to that effect, and the substance of the detective's testimony was generally consistent with the testimony of the child.

**5. Evidence— hearsay—other testimony—no prejudice**

Any error was harmless in a prosecution for first-degree rape where defendant contended that testimony tending to show that he was sexually promiscuous was double hearsay, but the jury heard ample other evidence suggesting his promiscuity.

Appeal by defendant from judgment entered 30 January 1998 by Judge Zoro J. Guice, Jr. in McDowell County Superior Court. Heard in the Court of Appeals 14 September 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Curtis O. Massey, II, for the State.*

*Lynch & Taylor, by Anthony Lynch, for defendant-appellant.*

LEWIS, Judge.

Defendant was tried at the 20 January 1998 Session of McDowell County Superior Court for the rape of a twelve-year old girl ("R") on 2 January 1997. The charge of first degree statutory rape was submitted to the jury, which returned a verdict of guilty on 30 January 1998. Defendant now appeals.

**[1]** Defendant first argues that R's family counselor, Sarah Wells, who testified as an expert witness for the State at trial, improperly commented on R's credibility, in violation of Rules 405(a) and 608(a) of the North Carolina Rules of Evidence. Specifically, defendant contends that the following testimony by Ms. Wells amounted to commenting on R's credibility:

Q: The signs that you've just described that you observed and looked for to indicate deceptiveness, what did you observe about [R] in that light?

[Objection; overruled.]

A: [R]'s behavior was typically—it was guarded but straight forward. Children who are making this stuff up want people to know so they talk about it. I'm not—I wasn't convinced that [R] had enough sexual education from adults or even from what she learned from kids around her to have been able to describe what she had described to the police. Those were both clear indicators to me that [R] was being very honest in her—

(Tr. at 752).

Rule 608(a) of the North Carolina Rules of Evidence permits the use of reputation or opinion testimony in order to bolster another witness' credibility, so long as it is done in accordance with Rule 405(a). Rule 405(a) then explicitly prohibits expert testimony regarding a witness' character. When read together, the Rules of Evidence thus prohibit an expert witness from commenting on the credibility of another witness. *State v. Wise*, 326 N.C. 421, 426, 390 S.E.2d 142, 145, *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990).

On the other side of the coin, however, Rule 702 permits expert witnesses to explain the bases of their opinions. Thus, "a witness who renders an expert opinion may also testify as to the reliability of the information upon which he based his opinion." *State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 842 (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995). Furthermore, the mental and emotional state of the victim before, during, and after a rape or sexual assault is relevant testimony that can help assist the trier of fact in understanding the basis of that expert's opinion. *State v. Kennedy*, 320 N.C. 20, 30-31, 357 S.E.2d 359, 366 (1987). A survey of our case law illustrates the line between properly explaining the basis of an expert's opinion and improperly commenting on a witness' credibility.

For example, in *State v. Wise*, our Supreme Court held that the following line of questioning was proper:

Q: Now ma'am, could you describe her emotionally when she was telling you these things during these counseling sessions?

A: Genuine.

*Wise*, 326 N.C. at 425, 390 S.E.2d at 145. The *Wise* court reasoned that the expert was only describing her observations as to the victim's emotions, not the credibility of the victim herself. *Id.* at 427, 390 S.E.2d at 146. Likewise, our Supreme Court also held as proper the following response when an expert was asked to explain the victim's performance on certain tests: "[She responded in an] honest fashion . . . admitting that she was in a fair amount of emotional distress." *Kennedy*, 320 N.C. at 30, 357 S.E.2d at 366. That court reasoned the expert was simply commenting on the reliability of the test results. *Id.* at 31, 357 S.E.2d at 366. And this Court, in *State v. Jenkins*, 83 N.C. App. 616, 351 S.E.2d 299 (1986), *cert. denied*, 319 N.C. 675, 356 S.E.2d 791 (1987), concluded that the following questioning was permissible:

Q: Are you saying from your practice in your particular profession children don't fantasize?

A: Not to that extent. . . . I do not believe children will lie concerning sexual abuse. . . . I don't believe they make up stories along those lines.

*Id.* at 624, 351 S.E.2d at 304 (citing *State v. Raye*, 73 N.C. App. 273, 326 S.E.2d 333, *disc. review denied*, 313 N.C. 609, 332 S.E.2d 183 (1985)). We reasoned in *Jenkins* that the expert was simply explaining the basis of her opinion by referring to children in general, as opposed to the victim in particular. *Id.*

On the other side of the line, our Supreme Court concluded that the following questioning amounted to improper comments as to the victim's credibility:

Q: Mrs. Broadwell, do you have an opinion satisfactory to yourself as to whether or not [V] was suffering from any type of mental condition in early June of 1983, or a mental condition which could or might have caused her to make up a story about the sexual assault?

[Objection; overruled.]

A: There is nothing in the record or current behavior that indicates that she has a record of lying.

*State v. Heath*, 316 N.C. 337, 340, 341 S.E.2d 565, 567 (1986). The *Heath* court reasoned that, although couched in terms of a mental condition, the question was actually intended to elicit an opinion as to whether or not the victim had been lying. *Id.* at 342, 341 S.E.2d at 568. In *State v. Teeter*, 85 N.C. App. 624, 355 S.E.2d 804, *disc. review denied*, 320 N.C. 175, 358 S.E.2d 67 (1987), this Court reached the same conclusion as to the following question and response:

Q: And tell the members of the jury why you believed [R] was telling the truth.

[Objection; overruled.]

A: When I talk with children or adults who have been sexually abused, I typically try to get them to tell me the story from different angles. Every time I went to [R] to go back to the story, her story was always consistent . . . .

*Id.* at 631-32, 355 S.E.2d at 808. And finally, in *State v. Jenkins*, this Court again held that the following line of questioning violated Rules 608(a) and 405(a):

Q: Do you have an opinion as to whether when [X] states that an adult female, Beverly Jenkins, has tied him in a chair naked, and has touched his private parts, can he be making these things up?

A: Yes. I have an opinion.

Q: What is that opinion?

A: My opinion is he is not making up the—if he has said that he has been sexually abused, he is not making that up. Children do not lie about sexual abuse.

*Jenkins*, 83 N.C. App. at 623, 351 S.E.2d at 303.

Admittedly, the line between proper and improper questioning can be quite narrow, especially in the context of sexual assault and rape cases. This Court, for example, recently struggled over an expert's testimony, "I believed that [the victim] was a reliable informant." *State v. Bright*, 131 N.C. App. 57, 60, 505 S.E.2d 317, 319 (1998). One judge concluded this was proper to explain why the expert could rely on the victim's information. *Id.* at 60-61, 505 S.E.2d at 319. The

remaining two judges concurred in the result but concluded that the expert's response violated Rules 405(a) and 608(a). *Id.* at 62, 505 S.E.2d at 321 (Greene, J., concurring). Although *Bright* illustrates how narrow the line can be, we do not feel Ms. Wells' testimony crossed that line here into commenting on R's credibility.

Ms. Wells' opinion was that R suffered from post traumatic stress syndrome disorder ("PTSSD"). Under Rule 702, Ms. Wells could explain how she concluded that R suffered from PTSSD, including testifying as to R's mental and emotional state and as to the reliability of the information used to formulate her opinion. In formulating her opinion, Ms. Wells explained that one of the indicators of PTSSD is that the victim "has experienced actual or threatened serious injury or threat to her physical integrity." (Tr. at 748). The testimony complained of here simply seeks to explain why Ms. Wells felt R had experienced a traumatic event: R's behavior and lack of sexual education convinced Ms. Wells that the information she was using to formulate her opinion was reliable. In short then, Ms. Wells' testimony went to the reliability of her diagnosis, not to R's credibility. Accordingly, this was a permissive use of expert testimony under Rule 702.

[2] Next, defendant assigns as error the admission of certain testimony suggesting that defendant stole a bracelet when the testifying witness admitted she had no knowledge as to whether the bracelet had been stolen. During the State's case-in-chief, N, a young girl who lived in the same neighborhood as R and the defendant, testified that defendant's girlfriend once visited her in order to return her bracelet. The following questioning then transpired:

Q: How did [defendant's girlfriend] come to have your bracelet, if you know?

A: Either it was tooken [sic]—

[DEFENSE COUNSEL]: Objection, if she doesn't know, she shouldn't be testifying about it.

[COURT]: If she knows.

A: Either it was tooken [sic] or I gave it to somebody who dropped it. I'm not sure.

(Tr. at 558-59). Defense counsel made no further objection, nor did he move to strike or request an instruction that the jury disregard. His failure to do so renders his objection waived.

In response to defense counsel's objection, the trial judge ruled that N's response was admissible only "[i]f she knows." When N confessed that she did not know, her response thereby became inadmissible. It was then defense counsel's duty to move to strike the earlier testimony through a *new* motion. *Cf. State v. Jordan*, 305 N.C. 274, 276-77, 287 S.E.2d 827, 829 (1982) (stating it was defendant's obligation to move to strike earlier objected-to testimony relating to a letter once it became apparent that the testimony was inadmissible because the letter itself was ruled inadmissible). Because defendant failed to make a timely new objection or motion to strike, his assignment of error fails. *Wise*, 326 N.C. at 425, 390 S.E.2d at 145 ("When an objection is not timely made, it is waived.").

**[3]** Defendant next argues that certain testimony elicited from the victim's mother violated his motion *in limine*. That motion *in limine*, granted by the trial court, prohibited the State from "offering any testimony that the McDowell County Sheriff's Department or any law enforcement agency was investigating defendant for the use or distribution of controlled substances." Defendant contends that this was violated when, on cross-examination by defense counsel, the victim's mother testified:

> I called McDowell County Sheriff's Department to report that there was a person out at Twin Lakes that I suspected of selling drugs to the kids out there, and it was [defendant].

(Tr. at 445). Because the trial judge offered a curative instruction, and because the error, if any, was harmless, we reject defendant's argument.

Immediately after this testimony was offered, the trial judge instructed the jury to disregard it. "When a jury is instructed to disregard improperly admitted testimony, the presumption is that it will disregard the testimony." *State v. McCraw*, 300 N.C. 610, 620, 268 S.E.2d 173, 179 (1980). Defendant has pointed to nothing in the record, nor can we find anything, that even remotely suggests the jury failed to follow this instruction.

Furthermore, the error, if any, was harmless. During his case-in-chief, defense counsel specifically questioned defendant's former fiancée regarding the police investigation into defendant's distribution of drugs:

> Q: How many times did you see [Detective] Tom Farmer out at your trailer in March and April, 1997?

A: Three.

Q: Did he come to see you each time?

A: Yes.

Q: The first time he came to you, did he come to ask you questions about sex and improper contacts with young girls?

A: Not the first time.

Q: What did he ask you about then?

A: The first time he asked if [defendant] had been dealing drugs from the trailer?

. . . .

Q: Do you have any idea . . . why this man would think y'all were dealing guns out of that trailer?

A: No.

Q: Or drugs?

A: No.

(Tr. at 869, 871). To receive a new trial, defendant must show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a) (1997). Given that the jury also heard this testimony from a defense witness regarding defendant's suspected distribution of drugs, we fail to see how non-commission of the alleged error would have led to a different result at trial.

[4] Finally, defendant contests the admission of certain testimony as hearsay. Defendant objects first to the following testimony of Detective Kelly Reeves:

Q: What did [A] say to you?

[Objection; overruled.]

A: [A] had indicated to us that a girl that he knew had been raped by [defendant], had stated that he had knew [sic] some other children in the park that [defendant] had touched—

. . . .

Q: Do you recall if [A] was able to tell Detective Farmer specifically who his friend was that had been raped by the [d]efendant?

[Objection; overruled.]

A: He said [R].

(Tr. at 271, 273). Our courts have long held that statements offered to corroborate previous testimony are not hearsay because they are not offered to prove the truth of the matter asserted. *State v. Holden*, 321 N.C. 125, 142, 362 S.E.2d 513, 525 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Detective Reeves' testimony here was specifically offered to corroborate the testimony of A and the jury was instructed to that effect. Accordingly, his testimony was admissible so long as it was "generally consistent with the [other] witness's testimony." *State v. Locklear*, 320 N.C. 754, 762, 360 S.E.2d 682, 686 (1987). A testified as follows:

Q: Tell the jury what you told Detective Reeves and Detective Farmer when they came out to Twin Lakes that day?

A: I told them about how [defendant] always had his hands on everybody when we would play the games. I told them what [R] told me that [defendant] had done to her . . . .

(Tr. at 290-91). Though different words were used, the substance of Detective Reeves' testimony was generally consistent with the testimony of A. Slight variations between the prior testimony and the corroborating testimony do not render the corroborating testimony inadmissible. *State v. Case*, 253 N.C. 130, 135, 116 S.E.2d 429, 433 (1960), *cert. denied*, 365 U.S. 830, 5 L. Ed. 2d 707 (1961). Accordingly, the trial court did not err in admitting Detective Reeves' testimony for corroborative purposes.

[5] Defendant also objects to the following response by A, arguing it constitutes double hearsay:

A: I told [Detective Farmer] that [R] had told me—

[DEFENSE COUNSEL]: Objection.

[COURT]: Overruled.

A: —that [B] had told [R]—

[DEFENSE COUNSEL]: Objection.

[COURT]:  Overruled.

[DEFENSE COUNSEL]:  It's double hearsay, Your Honor.

[COURT]:  Overruled.

A:—that she had slept with [defendant].

(Tr. at 292). Again, we conclude that the error, if any, was harmless. Defendant contends that this response tended to show he was sexually promiscuous, thereby prejudicing him. However, the jury heard ample other evidence already suggesting defendant's promiscuity. Four other children testified to the jury that defendant had previously touched them in their breasts, crotch, or both. The additional testimony of A complained of here did not further prejudice defendant such that a different result would have occurred at trial.

No error.

Judges MARTIN and HUNTER concur.