STATE OF NORTH CAROLINA v. JAMES TILTON REGISTER, Defendant

No. COA09-629

(Filed 7 September 2010)

## 1. Criminal Law— exclusion of family members from courtroom during minor victim's testimony—sexual offenses—possible reactions

The trial court did not err in a multiple sexual offenses case involving a child by excluding members of defendant's family from the courtroom during the minor victim's testimony. There was no authority that excluding supporters of both sides, while allowing other neutral individuals to remain including a high school class, was inconsistent with N.C.G.S. § 15-166 given that the issue was the possible reaction of family members.

## 2. Evidence— prior crimes or bad acts—sexual abuse of other children—remoteness in time—common plan

The trial court did not abuse its discretion by denying defendant's motion for a mistrial in a multiple sexual offenses case involving a child and by allowing testimony from four individuals who claimed that defendant had sexually abused them when they were children, even though the sexual acts occurred 14, 21, and 27 years prior to the start of the alleged abuse of this minor victim. The challenged testimony was admissible under N.C.G.S. § 8C-1, Rule 404(b) because it showed a strikingly similar pattern of sexually abusive behavior by defendant for 31 years, thus providing strong evidence of a common plan.

## 3. Evidence— expert witness testimony—vouching for credibility of minor victim—harmless error

The trial court erred in a multiple sexual offenses case involving a child by overruling defendant's objection and denying his motion to strike expert witness testimony that what the child said was "believable." Although the testimony constituted impermissible vouching for the credibility of the minor victim, defendant failed to show prejudice given the totality of evidence of defendant's guilt.

### 4. Sexual Offenses— motion to dismiss—sufficiency of evidence—child's inability to testify to exact dates

A *de novo* review revealed the trial court did not err by denying defendant's motion to dismiss the charges related to offenses alleged to have occurred in November and December 2006, including first-degree statutory sex offense, sexual activity by a substitute parent, taking indecent liberties with a child, and crimes against nature. A child's inability to testify accurately as to dates of alleged sexual abuse will not, by itself, necessarily require dismissal of the charges. The minor child offered some evidence that supported the November and December charges.

Appeal by defendant from judgments entered 15 January 2009 by Judge James F. Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 28 October 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Sonya M. Calloway-Durham, for the State.*

*Geoffrey W. Hosford for defendant-appellant.*

GEER, Judge.

Defendant James Tilton Register appeals from judgments convicting him of one count of attempted first degree rape, three counts of first degree statutory sex offense, five counts of taking indecent liberties with a child, one count of sexual offense by a substitute parent, and one count of crime against nature. Although defendant argues that the trial court erred in excluding defendant's family members from the courtroom during the alleged victim's testimony, we hold that the trial court, acting pursuant to its authority under N.C. Gen. Stat. § 15-166 and § 15A-1034(a) (2009), did not abuse its discretion when it decided to exclude family members of both the alleged victim and defendant with the exception of the alleged victim's mother and step-father.

Defendant also contends that the court erred in allowing the testimony of four witnesses who asserted that defendant had sexually abused them when they were children. Because this evidence tended to show that defendant had engaged in strikingly similar conduct whenever he had access to young relatives of a wife, we hold that the testimony was properly admitted under Rule 404(b) of the Rules of Evidence even though it involved conduct extending over a very substantial period of time. We agree with defendant, however, that

the trial court erred in admitting testimony from the State's expert witness that the alleged victim was "believable." Nonetheless, given the extensive evidence of guilt, we must conclude that this error was harmless. Accordingly, we uphold the judgments entered below.

Facts

At trial, the State's evidence tended to establish the following facts. Catherine[1] was just starting third grade when her mother began dating defendant. He moved in with Catherine and her mother shortly afterwards, in October 2003. Catherine considered defendant to be her "real dad" because he was "the only thing [she] had close to a father because [her] father was not there."

Not long after defendant moved in, he began engaging in sexual acts with Catherine. After Catherine came home from school, defendant would have her sit in his lap, and he would put his hands on her hips and move her bottom around on his lap. As time progressed, defendant started "doing more things," including approximately 20 to 25 instances of cunnilingus, 15 to 20 instances of his rubbing his penis against her vagina, one instance of his rubbing his penis against her bottom, occasional times when defendant made her rub his penis with her hands, and one "tongue-kiss[]." These incidents occurred when defendant and Catherine were home alone while Catherine's mother was away at work and almost always in Catherine's mother's bedroom.

Sometime in the summer of 2005, following an argument with Catherine's mother, defendant moved out of the house and into a trailer about 15 minutes away. Catherine visited defendant at the trailer on some weekends. Defendant performed cunnilingus on her approximately five to 10 times during the visits. Additionally, defendant rubbed his penis on her vagina once while the two of them were staying at a hotel when defendant took Catherine on an overnight trip to visit the zoo.

Defendant and Catherine's mother eventually reconciled and were married in June 2006, after which defendant moved back into the house and continued to engage in sexual conduct with Catherine. Five to 10 more incidents occurred, mostly involving cunnilingus. Once, however, defendant made Catherine perform fellatio on him.

---

1. The pseudonym "Catherine" is used throughout this opinion to protect the minor's privacy and for ease of reading.

On the evening of 24 January 2007, defendant had been rubbing his penis on Catherine's vagina for a few minutes when a friend of Catherine's called to tell her it was time to go to their dance class. Defendant answered the phone, and after the call, he continued to rub his penis on Catherine for a couple more minutes. Afterwards, according to Catherine, "there was stuff down there, sperm, down on [her] vagina" that "felt like slime, like grease" and "looked like slime, like gooey . . . like snot." Catherine cleaned herself up, changed clothes, and went to dance class.

After class, Catherine came home and told her mother that defendant "had been doing nasty stuff" to her. Her mother then took Catherine to Cape Fear Valley Hospital, where a rape examination was performed, and the police were contacted.

On 29 October 2007, defendant was indicted for one count of attempted first degree rape, one count of attempted first degree statutory sex offense, four counts of first degree statutory sex offense, seven counts of taking indecent liberties with a child, two counts of sexual activity by a substitute parent, two counts of crime against nature, and two counts of first degree statutory rape.

The case came on for trial on 12 January 2009, when Catherine was 13 years old. After the State rested, defendant moved to dismiss all charges based on insufficiency of the evidence. The trial court dismissed one count of attempted first degree statutory sex offense, one count of first degree statutory sex offense, one count of sexual offense by a substitute parent, two counts of indecent liberties with a child, one count of crime against nature, and two counts of first degree statutory rape. The court denied the motion as to one count of attempted first degree rape, three counts of first degree statutory sex offense, five counts of taking indecent liberties with a child, one count of sexual offense by a substitute parent, and one count of crime against nature.

The jury convicted defendant of all the remaining charges. The court sentenced defendant to concurrent presumptive-range terms of (1) 189 to 236 months for one count of attempted first degree rape and one count of taking indecent liberties with a child; (2) 19 to 23 months for one count of taking indecent liberties with a child; and (3) six to eight months for one count of crime against nature. The trial court also sentenced defendant to a presumptive-range term of 288 to 355 months for one count of first degree statutory sexual offense and one count of indecent liberties to run consecutive to the attempted

first degree rape sentence. Following that sentence is a consecutive presumptive-range term of 288 to 355 months for one count of first degree statutory sexual offense and one count of indecent liberties, which in turn is followed by a consecutive presumptive-range sentence of 288 to 355 months for·one count of first degree statutory sexual offense, sexual offense by a substitute parent and one count of indecent liberties. Defendant timely appealed to this Court.

I

[1] Defendant first argues that when, "[u]nder the auspices of sequestering witnesses, the trial court excluded all of the members of [defendant's] family" during Catherine's testimony, the court denied defendant a "fair trial because, during this crucial testimony, he had no one there on his behalf as support." At trial, the State requested that a "sequestration order apply to all those with the exception of [the] investigator" and possibly Catherine's mother. The State explained to the trial court that Catherine was only 13, she had been even younger when the abuse occurred, and the State was "trying to . . . prevent her from having to have to testify in a hostile environment with [defendant's] family sitting behind him." In response, defense counsel offered, "I think you could keep it from being a hostile environment. . . . I expect . . . my client's family to—to act appropriately in the courthouse towards this witness."

The trial court then ruled that it would allow no one in the courtroom during Catherine's testimony except for her mother, her stepfather, and an investigator for each side. On the day of Catherine's testimony, defendant repeated his objection, but the trial court left its "ruling in effect." The court, however, permitted a high school class of juniors and seniors to observe the proceedings, including Catherine's testimony. Defendant argues that the trial court's decision to permit a high school class to observe Catherine's testimony further "illustrates the lack of a reasoned basis for the court's decision."

At the outset, we note that the State, in making its motion, misidentified the relief it was seeking as "sequestration." Sequestration refers to the exclusion of witnesses from the courtroom until they testify. *See* N.C. Gen. Stat. § 15A-1225 (2009) ("Upon motion of a party the judge may order all or some of the witnesses other than the defendant to remain outside of the courtroom until called to testify, except when a minor child is called as a witness the parent or guardian may be present while the child is testifying even

though his parent or guardian is to be called subsequently."). Here, the trial court did not just exclude witnesses, but rather excluded everyone except certain designated individuals and the high school class. The trial court's ruling was actually pursuant to the court's authority under N.C. Gen. Stat. § 15-166 and N.C. Gen. Stat. § 15A-1034(a).

N.C. Gen. Stat. § 15-166 provides that "[i]n the trial of cases for rape or sex offense or attempt to commit rape or attempt to commit a sex offense, the trial judge may, during the taking of the testimony of the prosecutrix, exclude from the courtroom all persons except the officers of the court, the defendant and those engaged in the trial of the case." N.C. Gen. Stat. § 15A-1034(a) also gives the trial court the authority to "impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of courtroom proceedings or the safety of persons present."

While defendant contends that the trial court's order was subject to the requirements for closing a courtroom set out in *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210 (1984), that decision related to the Sixth Amendment right to a public trial. *Id.* at 44, 81 L. Ed. 2d at 37, 104 S. Ct. at 2214. Defendant has not, however, argued that he was denied a public trial. Instead, without citing any authority, defendant asserts that (1) he was denied "a fair trial because, during this crucial testimony, he had no one there on his behalf as support[,]" (2) defendant "could not receive a fair trial when his family was forced out of the courtroom during the presentation of the State's most critical evidence[,]" (3) "[t]his ruling denied [defendant] due process of law[,]" and (4) a victim's being required to testify with a defendant's family present "is part of the adversarial process and part of guaranteeing criminal defendants a fair trial."

To the extent that defendant is arguing that he had a constitutional right to have his family present, that argument was not made at trial, and we will not, therefore, consider it for the first time on appeal. *See State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal.").

With respect to non-constitutional arguments, defendant asserts that allowing members of the general public to remain while his "supporters" were excluded "is clearly not authorized" by N.C. Gen. Stat. § 15-166. We first note that whether a trial court could, under that statute, exclude only a defendant's "supporters" is not at issue in

this appeal. The trial court excluded "supporters" of both defendant and the alleged victim, with the exception of Catherine's mother and step-father.[2] Defendant has cited no authority that excluding "supporters" of both sides while allowing other neutral individuals to remain is inconsistent with N.C. Gen. Stat. § 15-166, and we have found none.

We do not believe that the language of the statute precludes such a ruling, especially in light of N.C. Gen. Stat. § 15A-1034(a), which grants the trial court authority to restrict access to the courtroom to ensure orderliness in the proceedings. Here, the State based its motion on its concern about Catherine, who was 13 years old, being confronted with "a hostile environment with [defendant's] family sitting behind him." The trial court chose to exclude everyone, not just defendant's family, with the exception of Catherine's mother. Our review of the transcript indicates that the trial court was very concerned about the potential for outbursts or inappropriate reactions by supporters of both defendant and the alleged victim, and the court in fact admonished family members at the start of the trial to control their reactions. While we do not judge a ruling in hindsight, we note that the trial court had to admonish family members at other times in the trial, and defendant even requested that the trial court take action.

As this Court pointed out in *State v. Dean*, 196 N.C. App. 180, 674 S.E.2d 453, *appeal dismissed and disc. review denied*, 363 N.C. 376, 679 S.E.2d 139 (2009), when it reviewed a trial court's decision to remove certain spectators from the courtroom, because a transcript is " 'an imperfect tool for conceptualizing the events of a trial,' " *id.* at 189, 674 S.E.2d at 460 (quoting *State v. Lasiter*, 361 N.C. 299, 305, 643 S.E.2d 909, 912 (2007)), we must leave "much . . . to the judgment and good sense of the judge who presides over [the trial],' " *id.* (quoting *State v. Laxton*, 78 N.C. 564, 570 (1878)).

In this case, the experienced trial judge was in a position to observe the dynamics of the courtroom and anticipate the possibility of a disruption by the families on both sides during the course of Catherine's testimony. Although we agree that it is unusual that the trial court allowed the high school class to stay, we cannot conclude that the trial judge's decision was unreasonable given that the issue

---

2. The trial court's ruling allowed Catherine's step-father to stay, but the State states that only her mother was present. We have not been able to determine from the record whether the step-father in fact remained in the courtroom.

was the possible reaction of family members.[3] *See id.* at 190, 674 S.E.2d at 460 (finding no abuse of discretion when trial court removed four individuals from courtroom, including codefendant, because of concerns that jury would be intimidated and individuals were talking).

## II

**[2]** We next address defendant's contention that the trial court erred in allowing testimony from four individuals who claimed that defendant had sexually abused them when they were children. The sexual acts occurred 14, 21, and 27 years prior to the start of the alleged abuse of Catherine. In addition to objecting, defendant, at the close of the State's evidence, moved for a mistrial based on the emotional state of the witnesses and the emotional impact of the testimony on those present in the courtroom. The trial judge denied defendant's motion, noting that he had not observed anything rising to the level of an emotional outburst that would unnecessarily or unduly prejudice the jury against defendant.

" 'We review a trial court's determination to admit evidence under N.C. R. Evid. 404(b) . . . for an abuse of discretion. An abuse of discretion occurs when a trial judge's ruling is manifestly unsupported by reason.' " *State v. Ray*, 197 N.C. App. 662, 672, 678 S.E.2d 378, 384 (quoting *State v. Summers*, 177 N.C. App. 691, 697, 629 S.E.2d 902, 907, *appeal dismissed and disc. review denied*, 360 N.C. 653, 637 S.E.2d 192 (2006)), *temporary stay allowed*, 363 N.C. 587, 681 S.E.2d 341 (2009), *disc. review allowed*, 363 N.C. 810, 692 S.E.2d 626 (2010). Under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident."

Rule 404(b) is a "rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). It is frequently observed that " 'North

---

3. Defendant has not suggested that he was prejudiced in any way by the presence of the high school class. Nor did he object at trial—his counsel's only comment was a reminder to the trial judge to explain to the jury that a class was present.

STATE v. REGISTER

[206 N.C. App. 629 (2010)]

Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges.' " *State v. Frazier*, 121 N.C. App. 1, 9, 464 S.E.2d 490, 494 (1995) (quoting *State v. Jacob*, 113 N.C. App. 605, 608, 439 S.E.2d 812, 813 (1994)), *aff'd*, 344 N.C. 611, 476 S.E.2d 297 (1996).

The first Rule 404(b) witness the State called was "Tiffany," whose aunt was married to defendant.[4] She testified that defendant had abused her in 1976 when she was about eight years old and visiting defendant and her aunt. Defendant had her perform fellatio on him at a drive-in movie. On a second occasion, he tried first to force her to perform fellatio, and, when she bit him, climbed on top of her and tried to take off her pants. She escaped and never visited the home again.

The second witness was Karen, whose mother was defendant's second wife. She testified that she was home alone one night with defendant in 1982 when she was 10 years old and her mother was working the third shift. She was sleeping in her mother's bed when she "was awoken in the middle of the night by a hand fondling [her] between [her] legs, and it was [defendant]." She got out of the bed as if to use the bathroom and went and hid in a utility closet. Soon afterwards, she went to live with her father so as "not to give him a chance again."

The third witness was Christopher, whose mother was defendant's third wife. According to Christopher, over a two-year period (from approximately 1987 through 1989), beginning when Christopher was in kindergarten, defendant had him perform fellatio on defendant, or defendant would masturbate the child. These incidents occurred two or three times a week in his mother's and defendant's bedroom while he was alone with defendant because his mother was working the second or third shift.

Christopher also testified about seeing defendant perform cunnilingus on his twin sister, Bonnie, and digitally penetrate her while Christopher performed fellatio on defendant. Bonnie testified as well, corroborating Christopher. She also testified that defendant fondled himself "and [made her] drink his pee."

---

4. The pseudonyms "Tiffany," "Karen," "Christopher," and "Bonnie" are used throughout this opinion to protect the Rule 404(b) witnesses' privacy and for ease of reading.

Defendant argues that this testimony lacked sufficient temporal proximity for admission under Rule 404(b) because the testimony related to acts that took place 14, 21, and 27 years before the acts alleged to have occurred in this case. In support of this argument, defendant cites *State v. Jones*, 322 N.C. 585, 369 S.E.2d 822 (1988).

In *Jones*, the sexual conduct testified about pursuant to Rule 404(b) had occurred seven to 12 years before the conduct that was the subject of the trial. *Id.* at 589, 369 S.E.2d at 824. The trial court admitted the testimony under Rule 404(b) based on the similarities between the two alleged instances of abuse, including the age of the girls, that the defendant was living in the same home as the girls and held a position of authority, that the defendant had vaginal intercourse with both girls in the afternoons and at night, that during the relevant periods the defendant was also having a sexual relationship with adult female relatives of the girls, and that in both cases the defendant used a gun to threaten the girls. *Id.* at 586-87, 369 S.E.2d at 823. The trial court concluded that the witness' testimony was admissible to show a common plan or scheme. *Id.* at 587, 369 S.E.2d at 823.

On appeal, however, the Supreme Court held that the testimony of the prior acts should have been excluded "because the prior acts were too remote in time." *Id.* at 591, 369 S.E.2d at 825. The Court reasoned: "The period of seven years 'substantially negate[s] the plausibility of the existence of an ongoing and continuous plan to engage persistently in such deviant activities.' As such, the reasoning that gave birth to Rule 404(b) exceptions is lost." *Id.* at 590, 369 S.E.2d at 824 (internal citation omitted) (quoting *State v. Shane*, 304 N.C. 643, 656, 285 S.E.2d 813, 821 (1982)). The Court explained further:

> Evidence of other crimes must be connected by point of time and circumstance. Through this commonality, proof of one act may reasonably prove a second. However, the passage of time between the commission of the two acts slowly erodes the commonality between them. The probability of an ongoing plan or scheme then becomes tenuous. Admission of other crimes at that point allows the jury to convict defendant because of the kind of person he is, rather than because the evidence discloses, beyond a reasonable doubt, that he committed the offense charged.

*Id.*

Subsequent to *Jones*, our Supreme Court specifically limited the applicability of *Jones* to cases in which there has been a substantial lapse in time between instances of sexual misconduct:

While a lapse of time between instances of sexual misconduct slowly erodes the commonality between acts and makes the probability of an ongoing plan more tenuous, *Jones*, 322 N.C. at 590, 369 S.E.2d at 824, the continuous execution of similar acts throughout a period of time has the opposite effect. When similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.

*State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989). Consequently, the Court held that prior sexual acts occurring over a 20-year period "were not too remote to be considered as evidence of defendant's common scheme to abuse the victim sexually." *Id.*

Defendant, however, points to *State v. Delsanto*, 172 N.C. App. 42, 50-51, 615 S.E.2d 870, 875-76 (2005), in which this Court, based on *Jones*, concluded that the trial court had erred in admitting testimony from a witness that the defendant had sexually abused her 23 years earlier. The Court concluded: "Like in *Jones*, the extreme time lapse between the alleged instances of abuse merits against finding that defendant was engaged in an ongoing plan or scheme of sexual abuse. Because the evidence was admitted solely for the purpose of showing a 'scheme, plan, system or design,' and because of the lapse of twenty-three years, a significant period of time, the trial court erred in admitting this evidence." *Id.* at 51, 615 S.E.2d at 876.

In *Delsanto*, however, this Court also recognized, citing *State v. Jacob*, 113 N.C. App. 605, 439 S.E.2d 812 (1994), that evidence of instances of abuse occurring a substantial time earlier could still be evidence of a plan despite a lapse in time when the "defendant's plan was interrupted and then resumed" later. *Delsanto*, 172 N.C. App. at 52, 615 S.E.2d at 876. In *Jacob*, this Court explained that "[t]he remoteness factor must be examined carefully to determine whether the plan or scheme of molestation was interrupted or ceased due to underlying circumstances, and then resumed in a continual fashion." 113 N.C. App. at 611, 439 S.E.2d at 815.

The Court in *Jacob* concluded that evidence of the defendant's sexual abuse of the daughters of his first marriage was admissible in his trial for abusing the daughter of a second marriage 10 years later because the lapse of time was due to the defendant's having no access to his daughters from the first marriage after his divorce, the fact that the defendant did not have a daughter in his second marriage (which occurred the same year as his divorce) until four years after the mar-

riage, and the time necessary for his daughter to reach "a prepubescent age." *Id.* The Court held: "[C]ircumstances prevented the defendant from carrying out his plan to sexually molest his daughters for an extended period of time, however, once the opportunity presented itself, defendant resumed the sexual abuse. Accordingly, we conclude that the remoteness in time in the present case does not make [the earlier daughter's] testimony regarding defendant's prior sexual abuse inadmissible." *Id.* at 612, 439 S.E.2d at 816.

This Court subsequently applied this reasoning again in *Frazier,* 121 N.C. App. at 11, 464 S.E.2d at 495-96, in which there was evidence of 26 years of sexual abuse of various victims, but also gaps in time in which no abuse occurred. In *Frazier,* the challenged testimony came from Patricia and Susie, daughters of the defendant's wife, and Vickie, his daughter-in-law, who was 14 when she married the defendant's son. Patricia was sexually abused in 1966, while Vickie was abused from 1966 to 1968. There was then a gap of eight years until the defendant started abusing Susie in 1976 when she was 16. *Id.* During the eight-year period, the defendant did not have access to Patricia or Vickie. The abuse of Susie continued until 1985 when there was another gap for four years, while the defendant did not have access to Susie, but then the defendant started abusing one of the minor victims in the case on appeal, Susie's step-daughter. *Id.*

Relying on *Shamsid-Deen,* the Court noted that when, as in that case, similar acts have been performed continuously over a period of years, the passage of time served to prove, rather than disprove, the existence of a plan. *Frazier,* 121 N.C. App. at 11, 464 S.E.2d at 495. If "there is a period of time during which there is no evidence of sexual abuse, the lapse does not require exclusion of the evidence if the defendant did not have access to the victims during the lapse." *Id.* Because the witnesses all testified to similar forms of abuse spanning 26 years and the defendant did not have access to victims during the eight-year and four-year lapses in sexual misconduct, the Court concluded that the testimony of the earlier abuse was admissible. *Id.,* 464 S.E.2d at 496. *See also State v. Brooks,* 138 N.C. App. 185, 200, 530 S.E.2d 849, 858 (2000) (upholding admission of evidence of assault of first wife in trial for assault of second wife despite gap of 17 years because defendant was in prison for half of the time and had not had a period of marital discord and, therefore, " 'circumstances prevented the defendant from carrying out his plan [and intent to keep his wives from divorcing him] for an extended period of time, however once the

opportunity [or necessity] presented itself, defendant resumed [his initial intent]' " (quoting *Jacob*, 113 N.C. App. at 612, 439 S.E.2d at 815)).

We hold that this case falls within the holdings of *Jacob* and *Frazier.* The challenged testimony showed a strikingly similar pattern of sexually abusive behavior by defendant over a period of 31 years: (1) defendant was married to each of the witnesses' mothers or aunt, (2) the sexual abuse occurred when the children were prepubescent, (3) at the time of the abuse, defendant's wife was away at work while he was home looking after the children, and (4) the abuse involved fondling, fellatio, or cunnilingus, in most instances taking place in defendant's wife's bed. This evidence presents a traditional example of a common plan. While there was a significant gap of time between Christopher and Bonnie's abuse and Catherine's abuse, that gap was the result of defendant's not having access to children related to his wife.

Accordingly, under *Jacob* and *Frazier*, this testimony was admissible under Rule 404(b). "Nevertheless, under Rule 403, relevant evidence may be excluded if its probative value 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *State v. Jacobs*, 363 N.C. 815, 823, 689 S.E.2d 859, 864 (2010) (quoting N.C.R. Evid. 403). "The exclusion of evidence under the Rule 403 balancing test lies within the trial court's sound discretion and will only be disturbed where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.* (internal quotation marks omitted). We hold, consistent with *Shamsid-Deen*, that the persistence of this conduct over time provided strong evidence of a common plan that the trial court could reasonably conclude, under Rule 403, outweighed any *unfair* prejudice.

Defendant has also argued based on the admission of this testimony that the trial court erred in denying his motion for a mistrial when, at the close of the Rule 404(b) testimony, Bonnie ran on in her testimony without a question pending, ultimately testifying that defendant made her "drink his pee." Defendant argues that "[a]t this point in the trial, the decorum in the courtroom vanished and the State's case deteriorated into a mud-slinging contest by the State's 404(b) witnesses toward [defendant]." Defendant acknowledges that we review a decision to deny a motion for a mistrial for abuse of

discretion. *See State v. Boyd*, 321 N.C. 574, 579, 364 S.E.2d 118, 120 (1988) ("The decision whether to grant a motion for mistrial rests within the sound discretion of the trial judge and will not ordinarily be disturbed on appeal absent a showing of abuse of that discretion."). Because we have held that the Rule 404(b) evidence was properly admitted and the only other factor cited by defendant as justifying a mistrial was Bonnie's testimony—which defendant has not challenged on appeal except under Rule 404(b)—we cannot conclude that the trial court abused its discretion when it denied the motion for a mistrial.

## III

**[3]** Defendant next argues that the court erred in overruling defendant's objection and denying his motion to strike expert witness testimony that constituted "impermissible vouching for the credibility of the prosecutrix." At trial, Dr. Laura Gutman testified for the State as an expert witness in the field of pediatric child abuse. Although defendant claims that the challenged testimony occurred during the State's direct examination of Dr. Gutman, the transcript reveals that it occurred during defendant's cross-examination:

Q. Okay; and, when you talked with [Catherine], there was no indication that she'd been penetrated vaginally, was there—when you spoke with her?

A. When I spoke with her, she had minimal symptoms of a child who has had penetrative trauma; not—not quite none; just—they were not—not very—just that they were minimal.

Q. Did she tell you she'd been penetrated?

A. She described the rubbing; and, I would say that, as far as vaginal penetration, since the oral penetration—well, I'm not discussing that. I mean, I felt that that was very graphic and believable.

[DEFENSE COUNSEL]: Objection to the terminology believable, Your Honor; motion to strike.

THE COURT: Overruled.

Generally, expert testimony as to the believability of a witness is prohibited by Rules 405(a) and 608(a) of the Rules of Evidence. *See State v. Heath*, 316 N.C. 337, 342, 341 S.E.2d 565, 568 (1986) ("Rules 608 and 405(a), read together, forbid an expert's opinion as to the

credibility of a witness."). Specifically, Rule 405(a) provides that "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." The commentary to Rule 608, which permits the credibility of a witness to be attacked or supported by opinion or reputation testimony as specified in Rule 405, emphasizes "that expert testimony on the credibility of a witness is not admissible."

Our Courts have found error when the trial court allowed expert testimony about a victim's believability. *See, e.g., State v. Aguallo*, 318 N.C. 590, 598-99, 350 S.E.2d 76, 81 (1986) (concluding, where pediatrician testified, " 'I think she's believable,' " that admission of testimony was error because it "amounted to an expert's opinion as to the credibility of the victim"); *Heath*, 316 N.C. at 340, 341, 341 S.E.2d at 567, 568 (concluding that expert testimony that " '[t]here is nothing in the record or current behavior that indicates that [victim] has a record of lying' " was "fatally flawed").

The State, however, argues that "[a]lthough expert testimony that what a child said was 'believable' is generally erroneous, when the *purpose* for using the word 'believable' is something other than a comment on the credibility of the child at trial, the use of such words can be appropriate." The State points to *State v. O'Hanlan*, 153 N.C. App. 546, 555, 570 S.E.2d 751, 757 (2002), *cert. denied*, 358 N.C. 158, 593 S.E.2d 397 (2004), which quoted *State v. Marine*, 135 N.C. App. 279, 281, 520 S.E.2d 65, 66-67 (1999) (quoting *State v. Jones*, 339 N.C. 114, 146, 451 S.E.2d 826, 842, (1994), *cert. denied*, 515 U.S. 1169, 132 L. Ed. 2d 873, 115 S. Ct. 2634 (1995)): " 'On the other side of the coin, however, Rule 702 permits expert witnesses to explain the bases of their opinions. Thus, "a witness who renders an expert opinion may also testify as to the reliability of the information upon which he based his opinion." ' "

In *O'Hanlan*, however, this Court held that the expert witness had not improperly bolstered the victim's believability because the expert "explained how he concluded that she had been sexually assaulted through the physical evidence, the victim's statements, and her emotional condition." 153 N.C. App. at 555, 570 S.E.2d at 757-58. Similarly, in *Marine*, the Court concluded that the expert's testimony "went to the reliability of her diagnosis, not to [the victim's] credibility" because the testimony "simply [sought] to explain why [the expert] felt [the victim] had experienced a traumatic event: [the victim's] behavior and lack of sexual education convinced [the expert]

IN THE COURT OF APPEALS

that the information she was using to formulate her opinion was reliable." 135 N.C. App. at 284, 520 S.E.2d at 68.[5]

Here, Dr. Gutman's testimony that Catherine was "believable" was not at all responsive to the question asked. Further, the testimony was not presented as a basis for Dr. Gutman's diagnosis. We hold, therefore, that the trial court erred in denying defendant's motion to strike the testimony.

Even though admission of this testimony was in error, defendant bears the burden of showing prejudice. In *State v. Davis*, 191 N.C. App. 535, 541, 664 S.E.2d 21, 25 (2008), this Court held that even when an expert had improperly vouched for the victim's testimony, there was "not a reasonable probability that the result in this case would have been different" had the statement been excluded, because "in addition to [the victim's] consistent statements and testimony that defendant had abused her sexually, the jury was able to consider properly admitted evidence of defendant's sperm found on [the victim's] skirt . . . . The jury also heard the testimony of [the victim] in the courtroom and . . . could therefore assess for themselves the credibility of [the victim]."

Likewise, in this case, in addition to Catherine's testimony, witnesses testified as to consistent statements that she made, and we have upheld the admissibility of the testimony of the State's Rule 404(b) witnesses, indicating that defendant had a longstanding plan of sexually abusing prepubescent children related to his wives. In addition, the State presented testimony from an SBI forensic DNA analyst that was sufficient to allow the jury to conclude that defendant had been the source of the semen on Catherine's underwear.

The analyst first explained to the jury that although finding extra genetic material on a person's jeans would not be unusual, finding extra genetic material on an intimate item like underwear would be unusual. She then informed the jury that after testing the genetic material which "definitely . . . came from semen" on Catherine's underwear, she had determined that there was a mixture of DNA profiles. There was no indication that there were more than two contributors of DNA on the underwear. The dominant profile belonged to Catherine.

---

5. While the State also cites *State v. Bright*, 131 N.C. App. 57, 60, 505 S.E.2d 317, 319 (1998), *disc. review improvidently allowed*, 350 N.C. 82, 511 S.E.2d 639 (1999), the opinion relied upon was not a majority opinion. Two of the three judges ultimately concurred in the result, but they concluded that the expert's choice of words "constituted expert testimony as to [the victim's] credibility, and as such, was inadmissible." *Id.* at 63, 505 S.E.2d at 321 (Greene, J., concurring).

With respect to the other profile, the analyst testified that defendant could not be excluded as a contributor, explaining that that meant "his profile or his genetic alleles" are included in the mixture. The analyst further testified that "you'd have to look at 193 million other people to find somebody else that would be included . . . ." The analyst helped the jury understand the meaning of this data by explaining,

> The chance of selecting an unrelated individual at random . . . you would have to look at 193 million people to find one that would fit into that mixture. If we look at North Carolina, North Carolina consists of approximately 8 million people. You would have to take every man, woman and child out of North Carolina and refill it 25 times before you would find an individual that would fit into this mixture . . . .

In sum, we hold that the trial court erred in failing to strike Dr. Gutman's testimony that Catherine's description was "believable." Nonetheless, in light of the totality of the evidence presented by the State, we hold that the trial court's error in admitting that testimony was harmless.

IV

[4] Lastly, defendant contends that the trial court erred in denying, defendant's motion to dismiss the charges relating to offenses alleged to have occurred in November and December 2006. These charges included one count each of first degree statutory sex offense, sexual activity by a substitute parent, taking indecent liberties with a child, and crime against nature. Defendant does not point to any particular element of these crimes as lacking in sufficient evidence to support them. Rather, he asserts that Catherine "clearly and unequivocally stated that no sexual acts occurred in November or December 2006."

"The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (internal citation omitted). When a defendant moves to dismiss, "[o]nly evidence favorable to the State is considered and contradictions, even in the State's evidence, are for the jury and do not warrant a granting of the motion. When so considered, the motion should be denied when there is substantial evidence, direct, circumstantial or both from which the jury could find that the offense charged was committed and that the defendant perpetrated the offense . . . ." *State v. Cobb*, 295 N.C. 1, 11, 243 S.E.2d 759, 765 (1978).

Despite defendant's assertion to the contrary, evidence was presented at trial supporting the November and December charges. On direct examination, Catherine testified that the abuse "happened, like, November and December." She also nodded her head in the affirmative when the State asked her if defendant touched her in "November or December of 2006, right before [she] told" her mother.

On the other hand, there was also evidence indicating that no abuse occurred in November or December. On direct examination by the State, when asked about "the last time that [defendant] touched [her] sexually before [she] told" her mother, Catherine said "nothing really happened in October. So, it was just mostly like—like part of June and, like, July." The State specifically asked, "So, from [sic] the last event you recall and before you told your mom would have been in July?" To this question, Catherine responded, "Yeah. That's the only thing I remember that hap—like, that was—from the last time before was in, like, July or in September." Later, Catherine testified in addition, "I don't remember anything in November or December." On cross-examination, she explained, "I don't remember the exact dates, but I remember that it happened."

In *Frazier*, 121 N.C. App. at 17, 464 S.E.2d at 499, the Court recognized that a child's inability to testify accurately as to dates of alleged sexual abuse will not, by itself, necessarily require dismissal of the charges. In *Frazier*, the defendant had argued that "there was a fatal variance between the dates of abuse alleged in the indictments and the evidence presented at trial." *Id.* The Court rejected the defendant's argument, noting that "[i]n child sexual abuse cases, specificity regarding dates diminishes." *Id.* The Court also reiterated that " 'in the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence.' " *Id.* (quoting *State v. Everett*, 328 N.C. 72, 75, 399 S.E.2d 305, 306 (1991)).

Here, Catherine offered some evidence that supported the November and December charges. In any event, under *Frazier*, her inability to remember precise dates was not sufficient to require dismissal of the charge, and the court did not err in denying defendant's motion.

No prejudicial error.

Judges ROBERT C. HUNTER and CALABRIA concur.