An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-620

NORTH CAROLINA COURT OF APPEALS

Filed: 20 January 2015

STATE OF NORTH CAROLINA

|  | Guilford County |
| v. | Nos. 11 CRS 82467-69, 82722-28, 86304, 86306, 88574 |

DOUGLAS RAYMOND MOORE

Appeal by defendant from judgments entered 11 October 2013 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 15 December 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Belinda A. Smith, for the State.*

> *Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

STEELMAN, Judge.

The trial court did not err in admitting evidence pursuant to Rule 404(b) of the North Carolina Rules of Evidence. The trial court did not abuse its discretion in applying rule 403.

I. Factual and Procedural Background

The State presented evidence tending to show that Douglas Raymond Moore (defendant) sexually assaulted C.P., X.P., and B.A., who were his step-grandchildren. C.P. was born in May 2002, X.P. was born in October 2003, and B.A. was born in February 2003. The three children were frequent visitors at the residence defendant shared with their grandmother.

X.P., who was ten years old at the time of trial, testified that from the time she was three or four years old until the age of eight, on multiple occasions defendant made her touch his bare penis while they were in her grandmother's bedroom, the living room or nursery of the home. At times defendant would touch her front and back privates. The incidents stopped after X.P. told her father.

C.P., who was eleven years old at the time of trial, testified that from the time she was four or five years old until after her eighth birthday, defendant touched her with his hands in her back private area, both over and under her clothes, and her upper and lower front private areas over her clothes. The touching occurred in the living room and X.P. was usually not present when it occurred. Once, when she was four or five years old, defendant unzipped his pants, removed his penis, placed it on her lips, and tried to put it in her mouth. He also showed her "dirty pics of men sticking their lower fronts in

women's mouth[s] and stuff like that." The touching continued through her eighth birthday and stopped after her father called the police.

B.A., who was ten years old at the time of trial, testified that defendant would touch her front and back privates under her clothes and underwear. She was five years old when defendant first started touching her, and was eight or nine years old when the touching stopped. Defendant touched her front private with his tongue more than five times, touched his penis to her mouth, put his penis partially in her lower front private, and touched his tongue to her lower back private.

In July 2011 X.P. confided to C.P. that defendant had been touching her and informed her that she was going to tell their parents. X.P. told her father that night. C.P. also told her father that defendant had been touching her. The girls' father contacted the police.

Defendant turned himself in to police on 18 July 2011. He told the police that the girls pulled down his pants and played with his penis and that he did not stop them.

Defendant was indicted for three counts of first degree sex offense with a child under 13 years of age, one count of attempted first degree rape, and two counts of indecent liberties with a child as to B.A. As to C.P., defendant was

indicted for one count of first degree sex offense with a child under 13 years of age, and three counts of indecent liberties with a child. As to X.P., defendant was indicted for three counts of indecent liberties with a child. The jury found defendant guilty on all counts. The trial court imposed consecutive sentences of imprisonment totaling 1,239 to 1,546 months imprisonment.

Defendant appeals.

## II. Admission of Evidence under Rule 404(b)

In his only argument, defendant contends that the court erred in admitting the testimony of defendant's daughter concerning incidents of defendant's conduct upon her during the summers of 1999 and 2000. Defendant asserts that the evidence had no probative value to prove any material fact other than defendant's bad character. We disagree.

## A. Standard of Review

Rule 404(b) of our Rules of Evidence provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C. Gen. Stat. § 8C-1, Rule

404(b) (2013). The purposes for which evidence may be admissible are not limited to those listed in the rule. *State v. DeLeonardo*, 315 N.C. 762, 770, 340 S.E.2d 350, 356 (1986). Rule 404(b) is a general rule of inclusion of evidence of other crimes, wrongs or acts, and such evidence will not be excluded unless its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. *State v. Jeter*, 326 N.C. 457, 459-460, 389 S.E.2d 805, 807 (1990).

Even if evidence is admissible for one of the stated purposes, the trial court retains the discretion to exclude the evidence if the court determines the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. N.C. Gen. Stat. § 8C-1, Rule 403 (2013). We review the court's ruling as to the admissibility of the evidence pursuant to Rule 404(b) to determine whether the evidence supports the court's findings of fact and whether the court's findings support its conclusions. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). We review the court's decision pursuant to Rule 403 for abuse of discretion. *Id.*

## B. Analysis

After conducting a *voir dire* hearing, the court permitted defendant's daughter, C.M.P., to testify that when she was nine or ten years old and living in Florida, she visited defendant at his residence in North Carolina for six weeks during the summer of 1999. Two or three times that summer, defendant unzipped his pants, placed her hand on his penis, and had her masturbate him. When she visited defendant the next summer, defendant repeated this conduct on two or three occasions. Each time that this occurred, defendant's wife was at work. In the summer of 2001, she returned to defendant's home but nothing happened as she went with defendant's wife to work each day and defendant's wife was at home during the evenings. She did not return to North Carolina after the summer of 2001. Two years prior to the trial, she received a telephone call from her step-sister (the mother of X.P. and C.P.), who asked why she stopped coming to North Carolina. Her step-sister gave her the telephone number for the district attorney. C.M.P. called the district attorney and told a detective what had happened to her.

In ruling that C.M.P.'s testimony about the instances in which defendant engaged her in masturbation was admissible, the court found the following facts: (1) defendant was related to all four – C.M.P., C.P., X.P. and B.A. – by blood or marriage, either as father or step-grandfather; (2) defendant sexually

assaulted all four girls while they were in his custody and care; (3) defendant used his penis to sexually assault all four girls, who were all very young, pre-teenage girls; (4) defendant committed substantially similar sexual acts against all four girls; (5) defendant sexually assaulted each girl multiple times over a course of a number of years; (6) defendant stopped sexually assaulting C.M.P. because he lost access to her; (7) defendant stopped sexually assaulting the other three girls after law enforcement was notified and he no longer had access to them; and (8) defendant took advantage of the availability and susceptibility of the girls when they were left in his custody and care. The court further found that the assaults upon C.M.P. were not so remote in time to render the evidence inadmissible. The court concluded that the evidence was admissible under Rule 404(b) to show a plan or scheme, absence of mistake, absence of accident, or *modus operandi*. The court also concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay, waste of time or presentation of cumulative evidence.

Our appellate courts have been "markedly liberal in admitting evidence of similar sex offenses for the purposes now enumerated in Rule 404(b)[.]" *State v. Cotton*, 318 N.C. 663,

666, 351 S.E.2d 277, 279 (1987). "Such evidence is relevant and admissible under Rule 404(b) if the incidents are sufficiently similar and not too remote." *State v. Bagley*, 321 N.C. 201, 207, 362 S.E.2d 244, 247-48 (1987).

The facts found by the trial court, for which we find evidentiary support, are similar to those in the case of *State v. Register,* 206 N.C. App. 629, 641, 698 S.E.2d 464, 472-73 (2010), in which the defendant (1) sexually abused children related to him by blood or marriage; (2) the abuse occurred when the children were prepubescent; (3) the abuse occurred while the defendant's spouse was away at work and defendant was taking care of the children; and (4) the abuse involved fondling, fellatio or cunnilingus, most often taking place in the same bed. We characterized these facts as presenting "a traditional example of a common plan." *Id.* at 641, 698 S.E.2d at 473. While there were some significant gaps in time between episodes of abuse, we noted these gaps were due to the defendant's not having access to children. We held that the evidence was admissible under Rule 404(b) and that no abuse of discretion was committed by the court in admitting the evidence given the persistence of the conduct over a period of time.

We conclude *Register* is controlling precedent. We hold that the trial court's findings of fact were supported by the

evidence and in turn supported its conclusions of law; that the trial court did not err in admitting C.M.P.'s testimony; and that there was no abuse of discretion by the trial court in its application of the Rule 403 balancing test.

NO ERROR.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).