IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-45

No. COA20-243

Filed 2 March 2021

Johnston County, No. 18 CRS 53952

STATE OF NORTH CAROLINA

v.

EDWIN GUILLERMO PERDOMO

Appeal by defendant from judgment entered 5 August 2019 by Judge Keith O. Gregory in Johnston County Superior Court. Heard in the Court of Appeals 13 January 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Ellen A. Newby, for the State.*

*Warren D. Hynson for defendant-appellant.*

ZACHARY, Judge.

Defendant Edwin Guillermo Perdomo appeals from the judgment entered upon a jury's verdict finding him guilty of taking indecent liberties with a child. After careful review, we discern no prejudicial error in the judgment entered upon Defendant's conviction.

***Background***

In October 2013, Cesar Perdomo moved from Honduras to Johnston County, North Carolina, with his wife and eight-year-old daughter, A.P.[1] They lived with Cesar's brother, Defendant, for approximately seven months until they moved into their own home nearby. Cesar, Defendant, and their sister were close, and their families would often visit and travel together.

In September 2017, 13-year-old A.P. told a friend, her soccer coach, the school social worker, and the school principal that Defendant was behaving in a sexually inappropriate manner toward her. On 27 September 2017, school personnel called A.P.'s mother and asked her to come to the school. In a meeting with the principal and two other school personnel, A.P.'s mother learned that A.P. had told the school social worker that Defendant had "touched her."

That day, school officials also notified the Johnston County Department of Social Services ("DSS") about A.P.'s allegations. On 28 September 2017, a DSS social worker began investigating. DSS scheduled a Child Medical Evaluation ("CME"). The Selma Police Department also became involved on 28 September 2017, after A.P. evinced an intent to harm herself. Dr. Beth Harold of the Child Abuse and Neglect Medical Evaluation Clinic ("CANMEC") conducted A.P.'s CME on 16 November 2017,

---

[1] Initials are used to protect the identity of the juvenile.

and Detective Johnathan Solomon then initiated his criminal investigation of A.P.'s allegations.

¶ 5        On 6 August 2018, a Johnston County grand jury returned a true bill of indictment charging Defendant with statutory rape of a person 15 years of age or younger and taking indecent liberties with a child. On 29 July 2019, the case came on for trial before the Honorable Keith O. Gregory in Johnston County Superior Court.

¶ 6        On 5 August 2019, the jury returned its verdicts, finding Defendant guilty of taking indecent liberties with a child, but not guilty of statutory rape. The trial court sentenced Defendant to a term of 16 to 29 months in the custody of the North Carolina Division of Adult Correction. The trial court also ordered Defendant to register as a sex offender for a period of 30 years upon his release from prison, and prohibited any contact by Defendant with A.P. for the remainder of Defendant's life. Defendant gave oral notice of appeal in open court.

## *Discussion*

¶ 7        On appeal, Defendant contends that (1) the trial court committed plain error by permitting the State's expert to vouch for A.P.'s credibility; (2) the trial court committed structural error by closing the courtroom and locking the doors during delivery of the jury instructions; and (3) Defendant received ineffective assistance of counsel at trial.

## I.

Defendant first argues that the trial court committed plain error by permitting the State's expert, Dr. Harold, to vouch for A.P.'s credibility by impermissibly testifying that A.P.'s medical history "was consistent with child sexual abuse" and that her "physical exam would be consistent with a child who had disclosed child sexual abuse." For the reasons that follow, we disagree.

### A. *Standard of Review*

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). Because Defendant's counsel failed to object to the challenged portions of Dr. Harold's trial testimony,

> we review his challenge on appeal for plain error. To establish plain error defendant must show that a fundamental error occurred at his trial and that the error had a probable impact on the jury's finding that the defendant was guilty. A fundamental error is one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Warden*, ___ N.C. ___, ___, 852 S.E.2d 184, 187 (2020) (citations and internal quotation marks omitted).

### B. *Analysis*

¶ 10        "It is well settled that expert opinion testimony is not admissible to establish the credibility of the victim as a witness." *State v. Frady*, 228 N.C. App. 682, 685, 747 S.E.2d 164, 167 (citation and internal quotation marks omitted), *disc. review denied*, 367 N.C. 273, 752 S.E.2d 465 (2013). In cases involving the alleged sexual abuse of a child,

> the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility. However, an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith.

*State v. Stancil*, 355 N.C. 266, 266–67, 559 S.E.2d 788, 789 (2002) (per curiam) (citations omitted). "This rule permits the introduction of expert testimony only when the testimony is based on the special expertise of the expert, who because of his or her expertise is in a better position to have an opinion on the subject than is the trier of fact." *Warden*, ___ N.C. at ___, 852 S.E.2d at 187–88 (citation and internal quotation marks omitted).

¶ 11        Defendant specifically challenges two portions of Dr. Harold's testimony from the State's case-in-chief:

> Q. Would you say, Doctor, that [A.P.]'s disclosure or medical history to [the social worker] was that -- would you say that that was consistent with child sexual abuse?

> A. This child gave [the social worker] a history that was *consistent with* child sexual abuse.
>
> . . . .
>
> Q. So even despite her disclosure of penile penetration, this physical exam is consistent and not inconsistent with that disclosure; is that right?
>
> A. This physical exam would be *consistent with* a child who had *disclosed* child sexual abuse.

(Emphases added).

¶ 12    Defendant challenges two aspects of this testimony: Dr. Harold's use of the phrase "consistent with" and her use of the word "disclosed." Defendant cites dicta from a recent opinion of this Court to essentially argue that, in the absence of physical evidence of abuse, Dr. Harold's use of the phrase "consistent with" amounted to vouching per se. *See State v. Davis*, 265 N.C. App. 512, 517, 828 S.E.2d 570, 574, *disc. review denied*, 372 N.C. 709, 830 S.E.2d 839 (2019) ("While it is impermissible for an expert to offer an opinion that a lack of physical evidence *is consistent with* sexual abuse, it may [be] permissible for the State to offer expert testimony that the lack of physical evidence *does not necessarily rule out* that sexual abuse may have occurred."). Similarly, Defendant cites a recent line of our jurisprudence that wrestled with whether the use of the word "disclose" or its variants amounted to vouching. *See, e.g.*, *State v. Betts*, 267 N.C. App. 272, 281, 833 S.E.2d 41, 47 (2019) ("There is nothing

about the use of the term 'disclose', standing alone, that conveys believability or credibility."), *appeal pending based on dissent*, ___ N.C. ___, 850 S.E.2d 348 (2020).

¶ 13 However, we need not address such word- or phrase-specific arguments, as our Supreme Court has explained that "[w]hether sufficient evidence supports expert testimony pertaining to sexual abuse is a highly fact-specific inquiry. Different fact patterns may yield different results." *State v. Chandler*, 364 N.C. 313, 318–19, 697 S.E.2d 327, 331 (2010) (citation omitted). For expert testimony to amount to vouching for a witness's credibility, that expert testimony must present "a definitive diagnosis of sexual abuse" in the absence of "supporting physical evidence of the abuse." *Id.* at 319, 697 S.E.2d at 331. Viewed in full context, it is clear that the specific challenged words and phrases from Dr. Harold's testimony did not present "a definitive diagnosis of sexual abuse." *See id.*

¶ 14 Immediately prior to the prosecutor's question that prompted Dr. Harold's first challenged answer, Dr. Harold explained:

> [Y]ou cannot tell from a medical exam whether a child has been sexually abused or not. The most important aspect of a child medical evaluation for a child who is undergoing a sexual abuse evaluation is the medical history that that child gives to whomever they give the history to. In this case, the history was provided to [the social worker].

¶ 15 This led directly to the first exchange that Defendant now challenges:

> Q. Would you say, Doctor, that [A.P.]'s disclosure or medical history to [the social worker] was that -- would you say that that was consistent with child sexual abuse?
>
> A. This child gave [the social worker] a history that was *consistent with* child sexual abuse.

(Emphasis added).

The prosecutor then invited Dr. Harold to "talk about [the] medical exam in this particular case." Dr. Harold thoroughly detailed her procedure for the exam and her findings, which led to the following exchange, including the second portion of testimony that Defendant challenges on appeal:

> Q. So there were no physical findings in this particular case?
>
> A. No physical findings.
>
> Q. Did that surprise you?
>
> A. Absolutely not.
>
> Q. Okay. For the same reasons you just testified here before?
>
> A. Yes, sir.
>
> Q. So even despite her disclosure of penile penetration, this physical exam is consistent and not inconsistent with that disclosure; is that right?
>
> A. This physical exam would be consistent with a child who had disclosed child sexual abuse.
>
> Q. Did that conclude your examination of her?

A. Yes.

¶ 17      Our review of the full testimony, in proper context and beyond the isolated excerpts that Defendant challenges on appeal, reveals that Dr. Harold's statements were "based on [her] special expertise [as an] expert, who because of . . . her expertise [was] in a better position to have an opinion on the subject than" the jury. *Warden*, ___ N.C. at ___, 852 S.E.2d at 187–88 (citation and internal quotation marks omitted). Rather than vouching for A.P.'s credibility, as Defendant claims, Dr. Harold appropriately provided the jury with an opinion, based on her expertise, that a lack of physical findings of sexual abuse does not generally correlate with an absence of sexual abuse.

¶ 18      Indeed, our courts have repeatedly held that a properly qualified expert may "testify concerning the symptoms and characteristics of sexually abused children and . . . state [the expert's] opinion[ ] that the symptoms exhibited by the victim were *consistent with* sexual or physical abuse." *State v. Kennedy*, 320 N.C. 20, 31–32, 357 S.E.2d 359, 366 (1987) (emphasis added); *accord State v. Aguallo*, 322 N.C. 818, 822–23, 370 S.E.2d 676, 678 (1988); *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 184, *aff'd per curiam*, 354 N.C. 354, 553 S.E.2d 679 (2001). Our Supreme Court has explained that this is "a proper topic for expert opinion" as it "could help the jury

understand the behavior patterns of sexually abused children and assist it in assessing the credibility of the victim." *Kennedy*, 320 N.C. at 32, 357 S.E.2d at 366.

¶ 19 In *Warden*, where "there was no physical evidence that [the child] was sexually abused, it was error to permit the DSS investigator to testify that sexual abuse had *in fact* occurred." ___ N.C. at ___, 852 S.E.2d at 188. By contrast, Dr. Harold's testimony, in its full context, is clearly distinct from offering an opinion that the child in question *has* or *has not* been abused, or *is* or *is not* credible—issues that are properly decided by the jury. *See, e.g.*, *State v. Worley*, 268 N.C. App. 300, 304, 836 S.E.2d 278, 282 (2019), *disc. review denied*, 375 N.C. 287, 846 S.E.2d 285 (2020).

¶ 20 Based on our courts' longstanding jurisprudence on this issue, and in light of our Supreme Court's recent decision in *Warden*, we discern no error, let alone plain error, in the trial court's admission of Dr. Harold's expert testimony. Defendant's argument is overruled.

## *II.*

¶ 21 Defendant next argues that, by "closing . . . the courtroom immediately prior to the jury charge[,]" the trial court committed structural error and "violated [his] constitutional right to a public trial[.]" However, he concedes that his counsel did not object to this procedure. Accordingly, Defendant requests that we invoke Appellate Rule 2 to review this purported constitutional error. We decline to do so. *See State v. Dean*, 196 N.C. App. 180, 188, 674 S.E.2d 453, 459 ("Defendant never presented any

constitutional arguments to the trial court, and we will not address such arguments for the first time on appeal."), *appeal dismissed and disc. review denied*, 363 N.C. 376, 679 S.E.2d 139 (2009); *see also State v. Register*, 206 N.C. App. 629, 634, 698 S.E.2d 464, 469 (2010).

¶ 22    However, even assuming, *arguendo*, that this issue is properly before us, Defendant has not shown that the trial court's conduct in this case amounted to a closure of the courtroom in the constitutional sense. Before the jury instructions, and without objection from either Defendant or the prosecutor, the trial court stated:

> I'm going to do the jury instructions now, but I don't want people in and out of the courtroom while I'm doing that. So people on the State side, if they want to come in now, they can come in now. If they don't, fine. Same for the defense because I don't want people in and out. I think the sheriff is going to lock the doors. If people on the defense side, if they want to come in, they can come in, but after that, Sheriff, if you will close the courtroom.

> [COURTROOM CLOSED]

The court also instructed those assembled in the courtroom: "Once again, there's no outbursts. Please leave now if that's the issue. And there's no in and out. Make sure your cell phones are turned off or on vibrate." The trial court's actions in this case would appear to be squarely within its statutory and inherent authority to control the courtroom.

A trial court judge has the inherent authority to "remove any person other than a defendant from the courtroom when that person's conduct disrupts the conduct of the trial." *Dean*, 196 N.C. App. at 189, 674 S.E.2d at 460; *see also* N.C. Gen. Stat. § 15A-1033 (2019). The trial court may also "impose reasonable limitations on access to the courtroom when necessary to ensure the orderliness of courtroom proceedings or the safety of persons present." N.C. Gen. Stat. § 15A-1034(a).

Further, our courts have repeatedly upheld a trial court's imposition of reasonable limitations of movement in and out of the courtroom where such limits are established to minimize jury distractions. In *Dean*, "we conclude[d] that the removal of the spectators [did] not entitle [the d]efendant to a new trial" where "jurors were aware that [a co-defendant] was present in the courtroom" and the trial court knew "that jurors were concerned for their safety[,] . . . that jurors during the first trial were intimidated and afraid, and that at least some of those feelings were engendered by the presence and conduct of people in the gallery." 196 N.C. App. at 190, 674 S.E.2d at 460. In *Register*, "[t]he trial court chose to exclude everyone," except the mother of the 13-year-old victim testifying against the defendant, because "the trial court was very concerned about the potential for outbursts or inappropriate reactions by supporters of both [the] defendant and the alleged victim, and the court in fact admonished family members at the start of the trial to control their reactions." 206 N.C. App. at 635, 698 S.E.2d at 469. And in *State v. Clark*, the trial court "warned

[spectators] that if they wished to leave the courtroom, they should do so immediately, for they would not be allowed to do so after closing arguments began, barring an emergency." 324 N.C. 146, 167, 377 S.E.2d 54, 66 (1989).

The trial court appears to have acted within its statutory and inherent authority to control the courtroom. Thus, we decline to invoke Rule 2 and dismiss Defendant's constitutional argument as unpreserved.

## *III.*

Lastly, Defendant argues that he was prejudiced at trial by ineffective assistance of counsel. After careful review, we disagree.

"A defendant's right to counsel, as guaranteed by the Sixth Amendment to the United States Constitution, includes the right to effective assistance of counsel." *State v. Todd*, 369 N.C. 707, 710, 799 S.E.2d 834, 837 (2017). In order to demonstrate ineffective assistance of counsel,

> a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (citations and internal quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L. Ed. 2d 116 (2006).

¶ 28 Our Supreme Court has held that "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

¶ 29 In the case at bar, Defendant argues that his counsel "failed in multiple instances to object to plainly impermissible testimony by numerous State's witnesses vouching for A.P., or otherwise consented to such inadmissible evidence, when there could be no reasonable strategic basis for doing so." Defendant specifically lists four purported errors, including counsel's failure to object to Dr. Harold's testimony that we addressed in section I of this opinion, which testimony, as previously discussed, was not error. The second alleged error is defense counsel's consent to the amendment of one of the State's exhibits to read "CANMEC concludes the examination results are *consistent with* sexual abuse." (Emphasis added). Again, as explained in section I regarding Dr. Harold's testimony, there was no error in the use of the phrase "consistent with." Accordingly, with regard to these two alleged errors, Defendant cannot "show that his counsel's performance was deficient[.]" *Allen*, 360 N.C. at 316, 626 S.E.2d at 286.

¶ 30        Defendant's remaining arguments concern defense counsel's failure to object to allegedly inadmissible hearsay, and counsel's consent to the admission of an audio recording of an interview with one of A.P.'s teachers. We need not analyze whether these were "unprofessional errors," as Defendant has not shown—given the remaining unchallenged evidence as well as the challenged evidence that we have held was not erroneously admitted—that either of these alleged errors give rise to a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Accordingly, Defendant's arguments are overruled.

## *Conclusion*

¶ 31        For the foregoing reasons, Defendant received a fair trial, free from prejudicial error.

NO ERROR.

Judges DIETZ and COLLINS concur.